# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALEXANDRA TORIBIO, individually and on behalf of all others similarly situated, | Case No. 1:22-CV-06639 |
| Plaintiff, | |
| v. | The Honorable Virginia M. Kendall |
| THE KRAFT HEINZ COMPANY, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT

**JENNER & BLOCK LLP**

Dean N. Panos (ARDC No. 6203600)
353 North Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
Fax: (312) 527-0484
DPanos@jenner.com

Kate T. Spelman (*pro hac vice*)
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199
KSpelman@jenner.com

Attorneys for Defendant
The Kraft Heinz Company

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 3

I.     PFAS Are Ubiquitous Substances with Unclear Health Effects at Unknown
Levels. ....................................................................................................................... 3

II.    Plaintiff Alleges She Was Economically Harmed by Her Purchase of Strawberry
Kiwi Capri Sun® That Allegedly Contains PFAS at Unspecified Levels. ................. 3

LEGAL STANDARD ...................................................................................................... 6

ARGUMENT ................................................................................................................... 7

I.     Plaintiff Does Not Sufficiently Allege That the Product Contains PFAS. ................ 7

II.    Plaintiff Lacks Article III Standing ......................................................................... 8

        A.    Plaintiff Lacks Standing to Seek Damages. ................................................... 8

               1.    Plaintiff Does Not Allege That the Specific Product She
Purchased Contained PFAS. ...........................................................9

               2.    Plaintiff Fails to Allege an Imminent Risk of Harm
Associated with Consuming the Product. ....................................... 10

        B.    Plaintiff Lacks Standing to Seek Injunctive Relief. .................................... 13

III.   Plaintiff Does Not State Plausible Consumer Deception Claims. ............................ 14

        A.    Plaintiff Does Not Plausibly Allege Kraft Heinz Made Any Affirmative
Misrepresentations Regarding the Product. ................................................... 14

        B.    Plaintiff's Omissions Claims Fail Because Plaintiff Does Not Plausibly
Allege that Kraft Heinz Was Aware of the Presence of PFAS in the
Product. .......................................................................................................... 17

        C.    Plaintiff's Claims Also Fail Because She Does Not Plausibly Allege
Materiality. ..................................................................................................... 19

IV.   Plaintiff's Failure-to-Disclose Claims Are Preempted. ......................................... 20

V.    Plaintiff's Ancillary Claims Fail for Independent Reasons ..................................... 22

CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akers v. Costco Wholesale Corp.*,
  No. 21-1098, --- F. Supp. 3d ----, 2022 WL 4585417 (S.D. Ill. Sept. 29, 2022) ..................... 14

*Apace Commc'ns, Ltd. v. Burke*,
  522 F. Supp. 2d 509 (W.D.N.Y. 2007) ............................................................................ 25

*In re Aqua Dots Prod. Liab. Litig.*,
  654 F.3d 748 (7th Cir. 2011) ....................................................................................... 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 6, 18

*Axon v. Citrus World, Inc.*,
  354 F. Supp. 3d .................................................................................................... 16, 17

*Axon v. Florida's Nat. Growers, Inc.*,
  813 F. App'x 701 (2d Cir. 2020) .................................................................................. 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................... 6

*Bildstein v. MasterCard Int'l, Inc.*,
  329 F. Supp. 2d 410 (S.D.N.Y. 2004) ........................................................................... 19

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*,
  No. 08-1967, 2009 WL 3762965 (W.D. Mo. Nov. 9, 2009) .............................................. 21

*Boysen v. Walgreen Co.*,
  No. 11-6262, 2012 WL 2953069 (N.D. Cal. July 19, 2012) .............................................. 13

*Bynum v. Fam. Dollar Stores, Inc.*,
  592 F. Supp. 3d 304 (S.D.N.Y. 2022) .................................................................. 23, 24, 25

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
  761 F.3d 732 (7th Cir. 2014) ................................................................................... 6, 13

*Catalano v. BMW of N. Am., LLC*,
  167 F. Supp. 3d 540 (S.D.N.Y. 2016) ........................................................................... 24

*Chen v. Dunkin' Brands, Inc.*,
  No. 17-3808, 2018 WL 9346682 (E.D.N.Y. Sept. 17, 2018), *aff'd*, 954 F.3d
  492 (2d Cir. 2020) ..................................................................................................... 23

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)............................................................................................8

*Cleary v. Philip Morris Inc.*,
    656 F.3d 511 (7th Cir. 2011) .......................................................................25

*Cota v. Ralph Lauren Corp.*,
    603 F. Supp. 3d 666 (E.D. Wis. 2022)........................................................7

*Cummings v. FCA US LLC*,
    401 F. Supp. 3d 288 (N.D.N.Y. 2019)......................................................18

*Doss v. Gen. Mills, Inc.*,
    No. 18-61924, 2019 WL 7946028 (S.D. Fla. June 14, 2019), *aff'd*, 816 F.
    App'x 312 (11th Cir. 2020) ........................................................................10

*Duchimaza v. Niagara Bottling, LLC*,
    No. 21-6434, 2022 WL 3139898 (S.D.N.Y. Aug. 5, 2022).....................22

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013).......................................................................15

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)......................................................................................8

*In re Fruit Juice Prods. Mktg. & Sales Practices Litig.*,
    831 F. Supp. 2d 507 (D. Mass. 2011) ........................................................12

*Gaminde v. Lang Pharma Nutrition, Inc.*,
    No. 18-300, 2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019) ......................9

*In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*,
    966 F. Supp. 1525 (E.D. Mo. 1997), *aff'd sub nom. Briehl v. Gen. Motors
    Corp.*, 172 F.3d 623 (8th Cir. 1999) ..........................................................23

*In re General Mills Glyphosate Litig.*,
    No. 16-2869, 2017 WL 2983877 (D. Minn. July 12, 2017) .....................17

*George v. Starbucks Corp.*,
    857 F. App'x 705 (2d Cir. 2021) ................................................................16

*In re Gerber Prod. Co. Heavy Metals Baby Food Litig.*,
    No. 21-269, 2022 WL 10197651 (E.D. Va. Oct. 17, 2022)................10, 11

*Harris v. Pfizer Inc.*,
    586 F. Supp. 3d 231 (S.D.N.Y. 2022).................................................17, 18

*Harris v. Topco Assocs., LLC*,
  538 F. Supp. 3d 826 (N.D. Ill. 2021) .......................................................................21

*Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*,
  No. 18-6664, 2019 WL 2515919 (N.D. Cal. June 18, 2019)....................................17

*Herrington v. Johnson & Johnson Consumer Companies, Inc.*,
  No. 09-1597, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010).........................11, 12, 20

*Hughes v. Chattem, Inc.*,
  818 F. Supp. 2d 1112 (S.D. Ind. 2011) ....................................................................13

*Kimca v. Sprout Foods, Inc.*,
  No. 21-12977, 2022 WL 1213488 (D.N.J. Apr. 25, 2022).........................10, 11, 12

*Kommer v. Bayer Consumer Health*,
  252 F. Supp. 3d 304 (S.D.N.Y. 2017).......................................................................15

*Koronthaly v. L'Oreal USA, Inc.*,
  374 F. App'x 257 (3d Cir. 2010) ...............................................................................13

*Lateef v. Pharmavite LLC*,
  No. 12-5611, 2012 WL 5269619 (N.D. Ill. Oct. 24, 2012) .....................................22

*Lee v. Mondelez Int'l, Inc.*,
  No. 22-1127, --- F. Supp. 3d ----, 2022 WL 16555586 (S.D.N.Y. Oct. 28,
  2022) .........................................................................................................................15

*Manley v. Hain Celestial Grp., Inc.*,
  417 F. Supp. 3d 1114 (N.D. Ill. 2019) ......................................................................24

*Muir v. Nature's Bounty, Inc.*,
  No. 15-9835, 2017 WL 4310650 (N.D. Ill. Sept. 28, 2017)...............................22, 23

*Myers v. Wakefern Food Corp.*,
  No. 20-8470, 2022 WL 603000 (S.D.N.Y. Mar. 1, 2022)...........................................7

*Parks v. Ainsworth Pet Nutrition, LLC*,
  377 F. Supp. 3d 241 (S.D.N.Y. 2019).......................................................... 17, 19, 22

*Payton v. County of Kane*,
  308 F.3d 673 (7th Cir. 2002) ....................................................................................14

*Pels v. Keurig Dr. Pepper, Inc.*,
  No. 19-3052, 2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) .....................................10

*In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*,
  588 F. Supp. 2d 527 (S.D.N.Y. 2008).......................................................................21

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011) ................................................................6

*Santiful v. Wegmans Food Mkts., Inc.*,
No. 20-2933, 2022 WL 268955 (S.D.N.Y. Jan. 28, 2022) ......................7

*Schiesser v. Ford Motor Co.*,
No. 16-730, 2016 WL 6395457 (N.D. Ill. Oct. 28, 2016) ....................23

*Schloegel v. Edgewell Pers. Care Co.*,
No. 21-631, 2022 WL 808694 (W.D. Mo. Mar. 16, 2022)......................9

*Silha v. ACT, Inc.*,
807 F.3d 169 (7th Cir. 2015) ................................................................7

*Simic v. City of Chicago*,
851 F.3d 734 (7th Cir. 2017) ..............................................................13

*In re Sling Media Slingbox Advert. Litig.*,
202 F. Supp. 3d 352 (S.D.N.Y. 2016)..................................................18

*Solak v. Hain Celestial Grp., Inc.*,
No. 17-704, 2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018)..................22

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016), *as revised* (May 24, 2016) ...................................8

*Suarez v. Playtex Prod.*, Inc.,
  Nos. 08-2703 & 08-3352, 2009 WL 2212315, at *2 (N.D. Ill. July 24, 2009)........................6

*Tome Engenharia E. Transporrtes, Ltd. v. Malki*,
No. 94-7427, 1996 WL 172286 (N.D. Ill. Apr. 11, 1996)....................25

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021).........................................................................13

*Turek v. Gen. Mills, Inc.*,
662 F.3d 423 (7th Cir. 2011) ..............................................................21

*Turnipseed v. Simply Orange Juice Co.*,
No. 20-8677, 2022 WL 657413 (S.D.N.Y. Mar. 4, 2022)......................7

*Twohig v. Shop-Rite Supermarkets, Inc.*,
519 F. Supp. 3d 154 (S.D.N.Y. 2021)..................................................15

*Wallace v. ConAgra Foods, Inc.*,
747 F.3d 1025 (8th Cir. 2014) ..............................................................9

*Ware v. Best Buy Stores, L.P.*,
  6 F.4th 726 (7th Cir. 2021) ...........................................................................23

*Weinstein v. eBay, Inc.*,
  819 F. Supp. 2d 219 (S.D.N.Y. 2011)......................................................15, 19

*Wienhoff v. Conagra Brands, Inc.*,
  No. 21-501, --- F. Supp. 3d ----, 2022 WL 4103974 (S.D. Ill. Sept. 8, 2022)..................24, 25

*Wisconsin Tech Sales, Inc. v. Tech Inc.*,
  No. 21-505, 2022 WL 1568890 (W.D. Wis. May 18, 2022) .................................18

*Womack v. EVOL Nutrition Assocs., Inc.*,
  No. 21-332, 2021 WL 5906340 (N.D.N.Y. Dec. 14, 2021) .................................18

*Zahora v. Orgain LLC*,
  No. 21-705, 2021 WL 5140504 (N.D. Ill. Nov. 4, 2021) ...............................14, 15

**Statutes**

810 ILCS 5/2A-210.......................................................................................23

15 U.S.C. § 2310(d)(3)(C) ............................................................................23

21 U.S.C. § 343-1(a) ...............................................................................20, 22

21 U.S.C. § 343(i)(2) ....................................................................................22

N.Y. U.C.C. § 2-313 ....................................................................................23

New York General Business Law § 349(d) ......................................................22

New York General Business Law § 350-d(b).....................................................22

**Other Authorities**

21 C.F.R. § 100.1(c)(4) .................................................................................20

21 C.F.R. § 101.100(a)(3)(iii) ..................................................................2, 21, 22

Fed. R. Civ. P. 9(b) .......................................................................................6

## **INTRODUCTION**

This lawsuit is one of a growing number of class actions seeking to hold consumer product companies liable for the alleged presence in their products of a continually expanding list of "undesirable" substances, many of which are ubiquitous in the environment. These substances are not ingredients in the consumer products, but may migrate at low levels into the products (if at all) through soil, water, or the manufacturing process. None of the cases plausibly allege that the substances are present at levels harmful to any consumer. Nonetheless, they seek to impose on companies a non-existent disclosure obligation with no limiting principle. Unsurprisingly, many of these cases have been dismissed at the pleading stage. This case should follow suit.

Here, Plaintiff alleges that The Kraft Heinz Company ("Kraft Heinz") misleadingly advertises its Strawberry Kiwi Capri Sun® juice drink (the "Product") because the Product allegedly contains trace amounts of per- and polyfluoralkyl substances ("PFAS")—though the Complaint does not allege that PFAS are an ingredient in the Product or that they are added to the juice. The FDA has recognized that PFAS are ubiquitous and unavoidable, and Plaintiff asserts only that these substances *may* be harmful to human health at some unspecified concentration. Though Plaintiff's entire lawsuit rests on the asserted presence of PFAS in the Product, she fails to provide *any* details regarding the "independent" PFAS testing she allegedly performed or the specific levels of PFAS she allegedly uncovered. Nonetheless, Plaintiff claims not only that Kraft Heinz should be held liable for failing to disclose the supposed presence of PFAS in the Product, but also for representing that the Product contains no artificial ingredients, flavors, colors, or preservatives (even though PFAS cannot reasonably be characterized as any of these things). Plaintiff's theories of injury and deception are fundamentally flawed and must be dismissed.

*First*, Plaintiff's vague and unspecific testing allegations—which are within her exclusive knowledge—do not sufficiently establish the presence of PFAS in the Product, particularly with

the level of specificity required under Rule 9(b), which is fatal to all of Plaintiff's claims.

*Second*, Plaintiff lacks Article III standing to seek damages because she does not plausibly allege that the specific product she purchased contains PFAS, or that she suffered economic injury due to an imminent threat of harm from consumption. Indeed, Plaintiff fails to allege that consumption of the Product has caused or is likely to cause any consumer harm. Though Plaintiff alleges vaguely that her testing revealed PFAS in concentrations higher than the EPA's recent interim health advisory for *drinking water*, Plaintiff does not and cannot explain why a health advisory based on the estimated lifetime exposure to drinking water has any applicability to a six-ounce juice pouch. Plaintiff also lacks standing to seek injunctive relief because she does not plausibly allege that she will be misled again by Kraft Heinz's alleged false advertising.

*Third*, Plaintiff does not state plausible consumer deception claims because she fails to identify any affirmative misrepresentations. Importantly, the alleged presence of a negative substance does not prohibit a manufacturer from advertising a product's positive qualities. Plaintiff's consumer deception claims also fail because she alleges *no* facts supporting her conclusory assertion that Kraft Heinz had knowledge of the alleged presence of PFAS in the Product; nor does she plausibly allege that the alleged presence of trace levels of PFAS in the Product is material to reasonable consumers.

*Fourth*, Plaintiff's failure-to-disclose claims are preempted under 21 C.F.R. § 101.100(a)(3)(iii) because, assuming PFAS are in the Product at all, they are "incidental additives" that the FDA has exempted from any disclosure obligation.

*Finally*, Plaintiff's ancillary claims fail for numerous independent reasons.

For all of these reasons, Kraft Heinz respectfully requests that the Court dismiss this lawsuit in its entirety with prejudice.

## BACKGROUND

**I.     PFAS Are Ubiquitous Substances with Unclear Health Effects at Unknown Levels.**

According to Plaintiff's own cited sources, PFAS are ubiquitous and unavoidable. *See, e.g.*, Ex. 1 (EPA noting "their widespread use and their persistence in the environment"); Ex. 2 ("widespread use [of PFAS] has left nearly everyone exposed"); Ex. 3 ("You cannot avoid [PFAS] as they are ubiquitous in products and the environment.") (internal quotation marks omitted).[1] Indeed, the CDC has noted that "you probably cannot prevent PFAS exposure altogether," and the European Environment Agency has said that "[i]t is difficult for citizens to totally avoid exposure to PFAS." Exs. 4, 5. PFAS are present in "a variety of food products and in the environment," including "water, air, fish, and soil." Ex. 1. Significantly, due to their ubiquitous nature, PFAS may enter food unintentionally through the environment or packaging. Ex. 6. Despite the ubiquitous and unavoidable nature of PFAS, Plaintiff nonetheless takes the untenable position that their presence in consumer products at any level constitutes consumer fraud.

Furthermore, although Plaintiff asserts that PFAS are "known to be harmful to both humans and the environment," Plaintiff repeatedly alleges only a *potential* risk of harm associated with some unknown level of exposure. *See, e.g.*, Compl. ¶¶ 2–3, 38, 42–43. U.S. government agencies and Plaintiff's cited sources agree that the health effects of PFAS exposure remain mostly unknown (*e.g.*, Exs. 1, 7, 8), in part because "[t]here are thousands of PFAS chemicals, and they are found in many different consumer, commercial, and industrial products." Ex. 1.

**II.     Plaintiff Alleges She Was Economically Harmed by Her Purchase of Strawberry Kiwi Capri Sun® That Allegedly Contains PFAS at Unspecified Levels.**

Plaintiff alleges that she purchased Strawberry Kiwi Capri Sun® from "various retailers

---

[1] All exhibits cited herein are attached to the concurrently filed Request for Judicial Notice.

including Stop & Shop locations in Nassau County, New York" at "numerous" times "[d]uring the applicable statute of limitations period." Compl. ¶ 89. According to Plaintiff, unspecified "independent third-party testing" "detected material levels of numerous PFAS in the Products." *Id.* ¶¶ 50–52. Aside from Plaintiff's conclusory statement that the testing was purportedly "conducted with accepted industry standards for detecting the presence of PFAS" (*id.* ¶ 51), she provides *no* details regarding such testing, including who conducted the testing, what methodology was used for the testing, or the specifics of what the testing found.

Plaintiff's only factual allegation regarding the levels of PFAS allegedly found in the Product relates to Perfluorooctanoic acid ("PFOA"), which Plaintiff alleges was found in the Product at "more than 200 times the EPA's recommended levels" for drinking water (though she does not disclose the specific level of PFOA allegedly identified). *Id.* ¶¶ 50–52, 57–58.

What Plaintiff refers to as the "EPA's recommended levels" for drinking water are in fact "interim" "Lifetime Health Advisory Levels," which are set to "protect all people, *including sensitive populations and life stages*, from adverse health effects resulting from exposure *throughout their lives* to . . . PFAS in drinking water." Ex. 9 (emphases added); *see also* Ex. 10 (EPA stating that its PFAS drinking water health advisories "only apply to exposure scenarios involving drinking water" and that "[c]alculation of specific risk levels for foods would require development of entirely different exposure assumptions"). The EPA has indicated these levels "were calculated to offer a margin of protection against adverse health effects" and "take into account other potential sources of exposure to . . . PFAS beyond drinking water (for example, food, air, consumer products, etc.), which provides an additional layer of protection." Ex. 9. Until the interim levels were released in June 2022, the EPA's Lifetime Health Advisory Level for PFOA was 70 parts per trillion ("ppt"), more than two hundred times greater than the interim level of

0.004 ppt.  *Id.*

Plaintiff does not explain how the EPA's interim lifetime health advisory level for drinking water is relevant to a six-ounce juice pouch, which is particularly notable given that the EPA has indicated that the recommended health advisory levels for other substances can be higher for juice than drinking water because, as common sense would tell us, "juice consumption levels . . . are . . . lower than drinking water intake."  Ex. 11.

Other than the vague and inapt comparison to the EPA's interim lifetime health advisory level for PFOA in drinking water, Plaintiff does not provide *any* information about the PFAS levels allegedly found in the Product.  Nor does she allege that the levels of PFAS allegedly found in the Product (whatever they are) have caused or are likely to cause any harm to her or anyone else, or that she or anyone else has suffered or is likely to suffer harm from consumption of the Product.

Based on the alleged presence of PFAS in the Product, Plaintiff challenges the following representations that appear on the Product label and website: (1) statements that the Product is made with "All Natural Ingredients" and has "no artificial colors, flavors, or preservatives" (Compl. ¶¶ 4, 9, 22, 25–26); (2) statements that the Product is made without high fructose corn syrup and has "half the sugar" of "regular juice drinks" (*id.* ¶ 4); and (3) the inclusion of "filtered water" in the Product ingredient list (*id.* ¶¶ 23–24).  Notably, Plaintiff does not allege that (1) PFAS are an ingredient, flavor, color, or preservative in the Product; (2) the Product contains high fructose corn syrup or more sugar than represented; or (3) the Product does not contain filtered water.  Rather, Plaintiff claims she "understood" based on the representations that the Product was "safe for use" and "free of harmful, man-made chemicals like PFAS"—although she does not allege that Kraft Heinz made any such statements or that ensuring that consumer goods are entirely free from even trace levels of all undesirable substances is even possible.  *Id.* ¶ 90.

5

And, despite not alleging any facts supporting her conclusory allegation that Kraft Heinz knew of the presence of PFAS in the Product, Plaintiff nonetheless claims that Kraft Heinz knowingly and intentionally omitted such information. *See, e.g.*, *id.* ¶ 102.

Plaintiff alleges she would not have purchased the Product, or alternatively it was worth less than she paid, due to the alleged misrepresentations and omissions. *See, e.g.*, *id.* ¶¶ 78, 87.

## LEGAL STANDARD

***Rule 12(b)(6).*** "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facts indicating the "mere *possibility* of misconduct" fall short. *Iqbal*, 556 U.S. at 679 (emphasis added). And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Rather, the plaintiff must "allege more by way of factual content to 'nudg[e]' his claim" of unlawful action "across the line from conceivable to plausible." *Id.* at 683 (quoting *Twombly*, 550 U.S. at 570).

***Rule 9(b).*** Under Rule 9(b), the plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the who, what, when, where, and how of the fraud." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (citation omitted). Rule 9(b) applies to all claims that "sound[] in fraud," *i.e.*, those that are "premised upon a course of fraudulent conduct." *Id.* (citation omitted). This includes statutory consumer fraud claims and any other claim relying on "allegations of fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011); *see also Suarez v. Playtex Prod.*, Inc., Nos. 08-2703 & 08-3352, 2009 WL 2212315, at *2 (N.D. Ill. July 24, 2009) (applying Rule 9(b) to New York General Business Law ("GBL") claim).

***Rule 12(b)(1).*** Plaintiff "bears the burden of establishing the elements of Article III

6

standing." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015).  In a facial standing challenge, "courts apply the same analysis used to review whether a complaint adequately states a claim." *Id.*

## ARGUMENT

### I.  Plaintiff Does Not Sufficiently Allege That the Product Contains PFAS.

Even assuming that the mere presence in the Product of any substance Plaintiff views as undesirable is sufficient to support a claim of consumer fraud, an untenable position that Kraft Heinz strongly rejects, Plaintiff's claims require her to sufficiently allege that the Product contains PFAS.  Plaintiff's allegations—which rely on her purported "independent testing"—fall short.

Courts have consistently dismissed false advertising claims allegedly supported by laboratory testing where plaintiffs "fail[ed] to provide any details whatsoever about what th[e] laboratory test entailed." *Myers v. Wakefern Food Corp.*, No. 20-8470, 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022) (dismissing lawsuit premised on allegation that defendant misrepresented presence of artificial flavors where complaint did not "describe the testing methodology followed, the specific date, time, or place of the testing, who conducted the testing, the qualifications of the testers, etc."); *see also, e.g.*, *Santiful v. Wegmans Food Mkts., Inc.*, No. 20-2933, 2022 WL 268955, at *4 (S.D.N.Y. Jan. 28, 2022) (similar); *Turnipseed v. Simply Orange Juice Co.*, No. 20-8677, 2022 WL 657413, at *4 (S.D.N.Y. Mar. 4, 2022) (similar); *cf. Cota v. Ralph Lauren Corp.*, 603 F. Supp. 3d 666, 672 (E.D. Wis. 2022) (dismissing lawsuit challenging thread-count representations and rejecting the plaintiff's reliance on "unspecified laboratory analysis").

Plaintiff's testing allegations are similarly bereft of detail.  As in *Myers*, *Santiful*, and *Turnipseed*, Plaintiff fails to disclose who conducted the testing, when and where the testing was conducted, and the methodology of the testing.  And although Plaintiff alleges that the testing "detected material levels of numerous PFAS in the Products, including concerning levels of [PFOA]" that were allegedly "more than 200 times the EPA's recommended levels" for drinking

water, she notably does not allege the actual levels found (or whether she tested the juice versus the packaging), which is information indisputably within her exclusive knowledge. Compl. ¶¶ 50–52, 57–58 (emphasis omitted). These allegations are insufficient to satisfy Rule 12(b)'s plausibility pleading, which requires more than conclusory allegations of "material[ity]," and unquestionably fail under Rule 9(b), which requires that Plaintiff "state with particularity" her allegations. Because all of Plaintiff's claims hinge on bare bones testing allegations, her entire Complaint must be dismissed.

## II.    Plaintiff Lacks Article III Standing.

Article III requires that Plaintiff "demonstrate a 'personal stake in the outcome'" of the case to proceed in federal court. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (citation omitted). To demonstrate such standing, Plaintiff "must show (1) [she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (citation omitted). And for it to be "concrete," "it must actually exist." *Id.* at 340. Plaintiff cannot establish standing to seek either damages or injunctive relief.

### A.    Plaintiff Lacks Standing to Seek Damages.

Plaintiff lacks standing to seek damages because she fails to allege an actual injury. Specifically, Plaintiff does not plausibly allege that the juice pouches *she* purchased contained PFAS, or that she suffered an economic injury due to an imminent threat of harm from the Product.

8

1. *Plaintiff Does Not Allege That the Specific Product She Purchased Contained PFAS.*

Setting aside Plaintiff's failure to sufficiently allege that *any* Strawberry Kiwi Capri Sun® pouch contains PFAS, Plaintiff fails altogether to allege that the *specific* pouches she purchased contained PFAS (or even whether PFAS were allegedly found in the juice versus the packaging). Plaintiff asserts only that her unspecified "testing" "detected material levels of numerous PFAS in *the Products*" and "revealed *the Product* contains PFOA in amounts more than 200 times the EPA's recommended levels" for drinking water. Compl. ¶¶ 52, 58 (emphases added). The Complaint generally defines "Product" as "Capri Sun® Strawberry Kiwi juice drink" (*id*. ¶ 1)— not the specific pouches purchased by Plaintiff. And Plaintiff does not allege any facts suggesting the levels in the Product she allegedly tested are representative of PFAS levels across all Product pouches. Indeed, the ubiquitous nature of PFAS and the way they may migrate into food suggest that the presence or levels of PFAS (if any) could be highly variable across pouches.

Courts regularly find that plaintiffs lack standing in false advertising cases where, as here, they fail to allege that the product they purchased was in fact adulterated. *See, e.g.*, *Gaminde v. Lang Pharma Nutrition, Inc.*, No. 18-300, 2019 WL 1338724, at *2 (N.D.N.Y. Mar. 25, 2019) ("[I]t is speculation to allege that because two CVS Krill Oil bottles in a USDA study were found to have less than the stated amount of Omega-3 Krill Oil, the bottle that Gaminde purchased must as well.").[2] The Court should follow suit and dismiss Plaintiff's claims.

---

[2] *See also, e.g.*, *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) (dismissing complaint alleging plaintiffs paid a premium for "100% kosher" hot dogs because plaintiffs "g[a]ve no reason to think *all* the beef marked as kosher . . . did not meet kosher standards" and it was thus "entirely possible, maybe probable, that the packages of beef they personally purchased and consumed" were kosher as advertised); *Schloegel v. Edgewell Pers. Care Co.*, No. 21-631, 2022 WL 808694, at *2–3 (W.D. Mo. Mar. 16, 2022) (finding plaintiff lacked standing where she alleged that samples of defendant's sunscreen products contained benzene but "failed to allege that she actually purchased Banana Boat Sunscreen products which were adulterated with benzene");

2.    *Plaintiff Fails to Allege an Imminent Risk of Harm Associated with Consuming the Product.*

Plaintiff claims to have suffered an economic injury due to her purchase of juice pouches that allegedly contain "toxic" substances "associated with numerous health concerns." Compl. ¶ 8. Whether Plaintiff pursues a benefit of the bargain or price premium theory of injury (*see, e.g.*, Compl. ¶¶ 78, 87), "underlying each approach is the basic principle that economic harm results when the purchase price of a product exceeds the actual value of the product after taking into account a defendant's improper actions." *In re Gerber Prod. Co. Heavy Metals Baby Food Litig.*, No. 21-269, 2022 WL 10197651, at *5 (E.D. Va. Oct. 17, 2022). Plaintiff fails to establish "economic harm" sufficient to confer standing because she does not plausibly allege an imminent risk of harm associated with consuming the Product, and thus cannot show that her purchase price "exceeds the actual value" of the Product.

Numerous courts have held that plaintiffs lack standing to pursue false advertising cases challenging allegedly adulterated products where the plaintiffs fail to allege they were harmed or faced an imminent risk of harm from consuming the product at issue. Two recent baby food cases are instructive. In *Kimca v. Sprout Foods, Inc.*, the plaintiffs alleged they would not have purchased or would have paid less for the defendant's baby food products if they had known those products contained heavy metals. No. 21-12977, 2022 WL 1213488, at *8 (D.N.J. Apr. 25, 2022). The court found that plaintiffs failed to allege injury under a price premium theory because they did "not identify any other comparable, cheaper, or safer products to show that they, in fact, paid

---

*Doss v. Gen. Mills, Inc.*, No. 18-61924, 2019 WL 7946028, at *2 (S.D. Fla. June 14, 2019), *aff'd*, 816 F. App'x 312 (11th Cir. 2020) (finding that plaintiff lacked standing where she did not "allege that the Cheerios she herself bought actually contain[ed] any glyphosate—just that some Cheerios that have been tested do"); *Pels v. Keurig Dr. Pepper, Inc.*, No. 19-3052, 2019 WL 5813422, at *5 (N.D. Cal. Nov. 7, 2019) (finding plaintiff "failed to plead a particularized injury by failing to plead the water *he* purchased contained violative arsenic levels").

a premium." _Id._ Additionally, the court rejected the benefit of the bargain theory because, although the plaintiffs alleged "(1) that the Baby Food Products contain heavy metals and (2) that elevated levels of heavy metals can be unsafe and dangerous," they did not "connect these two allegations by establishing that the levels of heavy metals in the Baby Food Products are unsafe." _Id._ Notably, the court rejected the plaintiffs' comparison of the heavy metal levels supposedly found in the challenged baby food products with the FDA and EPA's heavy metal limits for bottled and drinking water, as the complaint did "not contain any background information or explanation indicating that these are apt comparisons for use in the context of baby food." _Id._ at *6.

The _Gerber_ court reached a similar conclusion. As in _Kimca_, the plaintiffs alleged the presence of heavy metals in the defendant's baby foods, as well as "dangers to human health from exposure" to heavy metals, but failed to plausibly allege that the heavy metals _in the defendant's baby food products_ caused injury or created an "imminent risk" of injury to their children. 2022 WL 10197651, at *7. The court thus held that the plaintiffs failed to allege injury sufficient to confer standing under a benefit of the bargain theory of harm. _Id._ at *8, 10. Relatedly, the court rejected the price premium theory because the plaintiffs did "not allege how much they paid for the Baby Food Products, how much they would have paid had the material facts been disclosed, or any other details regarding the alleged price premium." _Id._ at *10.

_Herrington v. Johnson & Johnson Consumer Companies, Inc._ is also on point. No. 09-1597, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010). There, the plaintiffs alleged that the defendants failed to disclose that their children's bath products "contain[ed] probable carcinogens and other unsafe substances," including 1,4–dioxane and formaldehyde. _Id._ at *1. The court noted that the plaintiffs alleged only that "1,4–dioxane and formaldehyde _may_ be carcinogenic for humans, that there _could_ be no safe levels for exposure to carcinogens and that Defendants' products contain

11

some amount of these substances." *Id.* at *3. The court held that "[t]he risk Plaintiffs plead[ed] [was] too attenuated and not sufficiently imminent to confer Article III standing." *Id.*

Like the plaintiffs in *Kimca*, *Gerber*, and *Herrington*, Plaintiff tries to allege the presence of a contaminant—PFAS—in the challenged Product as well as alleged risks associated with that contaminant generally, but fails to allege past harm, or the imminent risk of future harm, from consumption of the Product itself.[3] At most, Plaintiff alleges that exposure to PFAS at unspecified levels is associated with potential health risks. Critically, however, Plaintiff does not allege that *she* faces an imminent risk of harm from the levels of PFAS allegedly found *in the Product*.

Plaintiff's attempt to compare the alleged levels of PFOA in the Product with the EPA's recently-published interim health advisory level for drinking water does not plausibly bridge this gap, as she does not allege how the EPA's interim advisory level—which is based on an individual's anticipated lifetime exposure to drinking water—has any relevance to Capri Sun® juice pouches. As in *Kimca*, the Court should reject Plaintiff's baseless comparison in light of her failure to allege "any background information or explanation indicating" why such comparison is "apt" in this context (which it plainly is not). 2022 WL 1213488, at *6. Accordingly, Plaintiff fails to allege injury-in-fact because she fails to allege that she received a product other than what she bargained for or that the product was worth any less given the alleged presence of PFAS.

*Kimca*, *Gerber*, and *Herrington* are not unique—many other courts have held that plaintiffs failed to establish economic injury sufficient to confer Article III standing under similar circumstances. *See, e.g.*, *In re Fruit Juice Prods. Mktg. & Sales Practices Litig.*, 831 F. Supp. 2d 507, 512 (D. Mass. 2011) (plaintiffs lacked standing in case alleging failure to disclose the presence of lead because "Plaintiffs paid for fruit juice, and they received fruit juice, which they

---

[3] Indeed, Plaintiff does not allege that she (or anyone) consumed the Products she purchased.

consumed without suffering harm"); *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010) (plaintiff's "subjective allegation that the trace amounts of lead in the lipsticks [were] unacceptable to her" was "not an injury-in-fact sufficient to confer Article III standing"); *Hughes v. Chattem, Inc.*, 818 F. Supp. 2d 1112, 1120 (S.D. Ind. 2011) (finding, where plaintiffs alleged they would not have purchased weight-loss supplement if they had known it contained hexavalent chromium, that allegations that they "*may* experience future harm from their limited exposure to hexavalent chromium," and "they now wish they had not purchased" the supplement, were insufficient to establish economic injury); *Boysen v. Walgreen Co.*, No. 11-6262, 2012 WL 2953069, at *5, 7 (N.D. Cal. July 19, 2012) (finding that plaintiff lacked standing where he did not allege that "any person ha[d] ever been injured" by defendant's fruit juice or that "consumption" of the juice "may cause physical harm," and rejecting comparison to toxin guidelines for bottled water). This Court should reach the same conclusion and dismiss this case for lack of standing.[4]

### B. Plaintiff Lacks Standing to Seek Injunctive Relief.

To pursue injunctive relief, Plaintiffs must allege that she faces "a real and immediate threat of future injury" from Kraft Heinz's conduct. *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (citation and internal quotation marks omitted). In the Seventh Circuit, consumer plaintiffs lack standing to seek injunctive relief once they are aware of alleged misrepresentations or omissions, as they are unlikely to be harmed again in the future. *See, e.g.*, *Camasta*, 761 F.3d at 740–41 ("Since Camasta is now aware of JAB's sales practices, he is not likely to be harmed by

---

[4] To the extent Plaintiff attempts to rely on *In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011), to argue that she has sufficiently established injury-in-fact by alleging she suffered a financial injury, that case is distinguishable because all products were recalled given that children had actually been injured, and the products were therefore worthless. Moreover, the Supreme Court has since held that "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a separate concrete harm." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210–11 (2021).

the practices in the future."); *Zahora v. Orgain LLC*, No. 21-705, 2021 WL 5140504, at *6 (N.D. Ill. Nov. 4, 2021) ("Courts in the Seventh Circuit have denied requests for injunctive relief where a plaintiff alleges they were deceived into purchasing a product they did not want and, because of the alleged fraud, would be unlikely to purchase the product again.").

That Plaintiff brought this suit reflects her awareness of the alleged presence of PFAS in the Product, and she is therefore unlikely to be harmed again in the future. Plaintiff's allegation that she "continues to desire to purchase the Product if she can rely on that Product to be safe and free from any artificial ingredients, including those known to pose a risk to human health" does not change that conclusion. Compl. ¶ 92; *see Akers v. Costco Wholesale Corp.*, No. 21-1098, --- F. Supp. 3d ----, 2022 WL 4585417, at *7 (S.D. Ill. Sept. 29, 2022) (finding plaintiff lacked standing to seek injunctive relief even though he alleged that "he intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations are consistent with its composition," reasoning that plaintiff was "aware of the . . . label and relative ingredients and would not likely be harmed by such representation in the future").[5]

### III. Plaintiff Does Not State Plausible Consumer Deception Claims.

#### A. Plaintiff Does Not Plausibly Allege Kraft Heinz Made Any Affirmative Misrepresentations Regarding the Product.

Sections 349 and 350 of the New York General Business Law require Plaintiff to show that Kraft Heinz's allegedly misleading representations and omissions "were likely to mislead a

---

[5] Plaintiff's purported representation of a class of purchasers also does not help her. The Seventh Circuit has made clear that "[s]tanding cannot be acquired through the back door of a class action" and that a named plaintiff cannot "piggy-back on the injuries of the unnamed class members." *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) (citation omitted). Thus, even if other class members are unaware that the Product allegedly contains PFAS, Plaintiff "cannot rely on the prospect that other consumers may be deceived . . . to show that she has standing to pursue injunctive relief." *Zahora*, 2021 WL 5140504, at *6 (citation omitted).

reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable,* 714 F.3d 739, 741 (2d Cir. 2013); *accord Lee v. Mondelez Int'l, Inc.,* No. 22-1127, --- F. Supp. 3d ----, 2022 WL 16555586, at *10 (S.D.N.Y. Oct. 28, 2022). Importantly, the "applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled." *Weinstein v. eBay, Inc.,* 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011). This is an "objective" standard, which is not defined by the unique views of the particular consumer before the Court. *See Kommer v. Bayer Consumer Health,* 252 F. Supp. 3d 304, 311 (S.D.N.Y. 2017).[6] Plaintiff cannot meet this standard with respect to her affirmative misrepresentation claims.

Based on the alleged presence of PFAS in the Product, Plaintiff challenges a series of representations on the Product label and website related to the use of natural ingredients and filtered water; the absence of artificial colors, flavors, preservatives, and high fructose corn syrup; and the sugar content of the Product. *See supra*, at p. 5. Despite failing to allege that PFAS are ingredients, flavors, colors, or preservatives, or that any of the other challenged statements are untrue, Plaintiff nonetheless claims that the representations are misleading because she "understood" from them that the product was "free of harmful, man-made chemicals like PFAS." Compl. ¶ 90. Plaintiff's theory of deception should be rejected because nothing about the challenged representations promises the absence of PFAS.

---

[6] Because the rest of Plaintiff's claims are premised on the same alleged misrepresentations and omissions, those claims all fail along with the claims under §§ 349 and 350. *See, e.g., Twohig v. Shop-Rite Supermarkets, Inc.,* 519 F. Supp. 3d 154, 165 (S.D.N.Y. 2021) (dismissing claims for breach of express and implied warranty, negligent misrepresentation, fraud, and unjust enrichment because plaintiffs "failed to allege that the Product's labeling would be likely to deceive or mislead a reasonable consumer"); *Zahora,* 2021 WL 5140504, at *5 (collecting cases and finding that "[a]bsent a plausible allegation of deception," claims for breach of express and implied warranty, negligent misrepresentation, fraud, and unjust enrichment also failed).

*George v. Starbucks Corp.* is instructive. No. 19-6185, 2020 WL 6802955 (S.D.N.Y. Nov. 19, 2020), *aff'd*, 857 F. App'x 705 (2d Cir. 2021). There, the plaintiffs alleged that Starbucks's "market[ing] [of] itself as a high-end coffee brand making use of quality ingredients" was misleading because Starbucks uses pest strips inside its stores that emit a pesticide harmful to human health. *Id.* at *1. The court dismissed the case (including the plaintiff's GBL claims) because the only actionable statement the plaintiff challenged—"no artificial dyes or flavors"— could not support a claim for deception because the pesticide at issue was "not an artificial dye or flavor," and "[n]o reasonable consumer would understand that statement to convey any information about the company's use or non-use of pesticides in its stores." *Id.* at *2. The Second Circuit upheld the dismissal, finding that "[n]o reasonable consumer would believe" that statements "refer[ring] only to how Starbucks sources its products and crafts its coffee and the ingredients it uses in its baked goods" "communicate anything about the use of pesticide in Starbucks's stores." *George v. Starbucks Corp.*, 857 F. App'x 705, 706 (2d Cir. 2021).

The glyphosate cases are similarly on point. In those cases, as here, the plaintiffs attacked the defendants' "natural" labeling statements as misleading because the challenged products contained trace amounts of a contaminant (glyphosate, a pesticide). Court after court rejected this theory of deception. In *Axon v. Citrus World, Inc.*, the court held that it was not misleading to call the product "natural" because "[g]lyphosate . . . is not an 'ingredient' added to defendant's products; rather, it is a substance introduced through the growing process." 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020). The court in *Parks v. Ainsworth Pet Nutrition, LLC* likewise held that the presence of glyphosate did not render the term "natural" misleading, as "a reasonable consumer would not be so absolutist as to require that 'natural' means there is no glyphosate, even an accidental and

innocuous amount, in the Products." 377 F. Supp. 3d 241, 247 (S.D.N.Y. 2019); *see also In re General Mills Glyphosate Litig.*, No. 16-2869, 2017 WL 2983877, at *6 (D. Minn. July 12, 2017) (finding that "Made with 100% Natural Whole Grain Oats" did not "mean[] that there is no trace glyphosate" in the product, and it would be implausible for a reasonable consumer to "so interpret the label"); *Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, No. 18-6664, 2019 WL 2515919, at *3 (N.D. Cal. June 18, 2019) (finding that a reasonable consumer would not "understand 'Natural' or 'All Natural Ingredients' to mean the utter absence of residual pesticides").

Here too, the challenged representations communicate nothing about the presence or absence of a purported contaminant in the Product. Representations that the Product contains only natural ingredients, colors, flavors, and preservatives do not promise the absence of PFAS, which are ubiquitous in the environment and are not alleged to be an "'ingredient' added to defendant's products" (*Axon*, 354 F. Supp. 3d at 183), or a color, flavor, or preservative. Similarly, Plaintiff does not allege that the Product contains more sugar than advertised or any high fructose corn syrup or that it does not contain filtered water, and those representations are entirely unrelated to PFAS. Although Plaintiff alleges she "understood" based on the challenged representations that the Product was "safe for use" and "free of harmful, man-made chemicals like PFAS," that interpretation is unreasonable and should be rejected. Compl. ¶ 90. "A plaintiff does not have a claim under the GBL just because she comes away from an advertisement with an incorrect impression," as "[t]hat impression must be reasonably traceable to a misleading statement from the defendant." *Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 243–44 (S.D.N.Y. 2022). Absent such a "misleading statement," Plaintiff's affirmative misrepresentation claims must be dismissed.

### B. Plaintiff's Omissions Claims Fail Because Plaintiff Does Not Plausibly Allege that Kraft Heinz Was Aware of the Presence of PFAS in the Product.

To state a plausible GBL claim based on omissions, a plaintiff must allege the defendant's

exclusive knowledge at the time of purchase, *i.e.*, that "the business alone possesse[d] material information that [was] relevant to the consumer and fail[ed] to provide this information." *Harris*, 586 F. Supp. 3d at 244 (citation omitted). Thus, "a defendant's failure to reveal facts about which even it was unaware at the time will not lead to liability." *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016) (dismissing GBL claim where plaintiffs "failed to plead facts sufficient to lead to the reasonable inference" of knowledge).

Plaintiff's allegations of knowledge are plainly insufficient. As an initial matter, Plaintiff hedges, alleging that "at all times relevant to this action, Defendant knew, *or at minimum should have known*, that its Product contains PFAS." Compl. ¶ 62 (emphasis added). But even putting that aside, Plaintiff's allegations of knowledge are entirely conclusory. *See id.* ¶¶ 62, 98. Courts have consistently dismissed GBL omissions claims for failure to allege knowledge in more than conclusory fashion. *See, e.g.*, *Harris*, 586 F. Supp. 3d at 244 (dismissing GBL omissions claim where the conclusory allegations did not "plausibly establish that Pfizer knew about any nitrosamine contamination in the medication that the plaintiffs purchased at the time they purchased it"); *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 309 (N.D.N.Y. 2019) (dismissing GBL omissions claims where plaintiff had not "plausibly suggested that Defendant had knowledge of the defect before she purchased the Class Vehicle"); *Womack v. EVOL Nutrition Assocs., Inc.*, No. 21-332, 2021 WL 5906340, at *10 (N.D.N.Y. Dec. 14, 2021) (dismissing GBL omissions claim where the "sole allegation regarding Defendant's knowledge"—that "Defendant knew or should have known [of the potential serious dangers]"—was "vague and conclusory").[7]

---

[7] Although Rule 9(b) permits a plaintiff to allege knowledge "generally," the Supreme Court has made clear that a plaintiff cannot "plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Iqbal*, 556 U.S. at 687; *see also Wisconsin Tech Sales, Inc. v. Tech Inc.*, No. 21-505, 2022 WL 1568890, at *5 (W.D. Wis. May 18, 2022) ("Although Federal Rule of Civil Procedure 9(b) allows intent and knowledge

Here, there is no allegation that Kraft Heinz added PFAS to the Product as an ingredient or other intended component of the juice, and the FDA has recognized that PFAS can enter food unintentionally through the environment or packaging. Ex. 6. Even assuming that PFAS were present in the Product, the underlying facts do not plausibly suggest Kraft Heinz's knowledge; rather, they suggest precisely the opposite and require dismissal of Plaintiff's omissions claims.

### C. Plaintiff's Claims Also Fail Because She Does Not Plausibly Allege Materiality.

Plaintiff's GBL claims also fail because she does not plausibly allege that the alleged trace amounts of PFAS found in the Product would be material to reasonable consumers, which is required to state a GBL claim. *See Weinstein*, 819 F. Supp. 2d at 227. "A material claim is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Bildstein v. MasterCard Int'l, Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004) (citations and internal quotation marks omitted). Here, Plaintiff's conclusory allegations of materiality (*e.g.*, Compl. ¶¶ 72, 77, 80) are rendered implausible by her failure to allege that the Product causes or even creates a risk of harm.

Courts regularly find that the presence of trace contaminants is not material to consumers where plaintiffs fail to plausibly allege that use/consumption of the products would cause harm. *Parks* is illustrative. There, the plaintiff alleged that the defendant mislabeled dog food as "natural," even though it contained trace amounts of the pesticide glyphosate. 377 F. Supp. 3d at 244. The court dismissed the suit, reasoning that the "presence of negligible amounts of glyphosate in a dog food product that do[es] not have harmful, 'toxic,' or 'carcinogenic' effects is not likely to affect consumers' decisions in purchasing the product and is thus not material." *Id.* at 248. The court in *Herrington* reached a similar conclusion. There, the plaintiff alleged that the defendants

---

to be pleaded 'generally,' that doesn't mean a conclusory allegation will suffice.").

failed to disclose that the children's bath products they sold "contain[ed] probable carcinogens and other unsafe substances." 2010 WL 3448531, at *1. The court held that the plaintiffs failed to sufficiently plead materiality because they had "not averred facts that show that the levels of these substances caused them or their children harm." *Id.* at *8.

Here, as in *Parks* and *Herrington*, Plaintiff does not allege that the levels of PFAS allegedly found in the Product have caused or are likely to cause any harm to consumers. *See supra*, at p. 12. Plaintiff alleges only that the levels of PFOA in the Product are "more than 200 times" the EPA's interim lifetime health advisory level for drinking water, but, as explained above, that comparison is meaningless. Compl. ¶¶ 57–58. Moreover, Plaintiff's cited sources make clear that PFAS are ubiquitous and cannot be avoided, and therefore consumers would not be surprised by their presence. As such, the alleged presence of PFAS in the Product at unspecified trace levels cannot be material to reasonable consumers, requiring dismissal of Plaintiff's GBL claims.

## IV. **Plaintiff's Failure-to-Disclose Claims Are Preempted.**

Plaintiff's omissions claims are also preempted by The Nutrition Labeling & Education Act ("NLEA"), which includes a broad express preemption provision directing that "no State or political subdivision of a State may directly or indirectly establish . . . any requirement for . . . labeling of food . . . that is not identical to the requirement[s]" imposed by federal law. 21 U.S.C. § 343-1(a)(2). The phrase "'[n]ot identical to' does not refer to the specific words in the requirement but instead means that the State requirement directly or indirectly imposes obligations or contains provisions" that are "not imposed by or contained in" or that "[d]iffer from those specifically imposed by or contained in" the statute or the FDA's implementing regulations. 21 C.F.R. § 100.1(c)(4).

Plaintiff cannot avoid this preemption provision by claiming her asserted disclosure requirements are "consistent with the requirements imposed by the Food, Drug, and Cosmetic

Act," because "consistency is not the test; identity is." *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011). Put another way, "[s]tates can impose requirements that are identical to those imposed by the FDCA, but not different from or more burdensome than those requirements." *Harris v. Topco Assocs., LLC*, 538 F. Supp. 3d 826, 831 (N.D. Ill. 2021); *accord In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008) ("[S]tate law cannot impose obligations beyond, or different from, what federal law requires.").

Plaintiff does not identify any FDA regulation requiring the disclosure of PFAS on food labeling, because none exists. To the contrary, the FDA expressly exempts manufacturers from having to disclose the presence of "[i]ncidental additives that are present in a food at insignificant levels and do not have any technical or functional effect in that food," including "[s]ubstances migrating to food from equipment or packaging or otherwise affecting food that are not food additives as defined in section 201(s) of the act." 21 C.F.R. § 101.100(a)(3)(iii).

Any PFAS allegedly found in the Product would constitute incidental additives that need not be disclosed under the FDA's regulations. Plaintiff does not allege that PFAS have any technical or functional effect in the product. And because she fails to allege any actual levels of PFAS in the Product (aside from a vague and misguided comparison to the EPA's interim lifetime health advisory for drinking water), she cannot argue that PFAS are found in any more than "insignificant levels." Further, as noted above, the FDA has indicated that PFAS enter food through the environment or packaging, and thus would be considered "[s]ubstances migrating to food from . . . packaging or otherwise affecting food." 21 C.F.R. § 101.100(a)(3)(iii).

Other courts have found preemption under the same regulation where plaintiffs sought to require disclosure of other incidental additives. *See In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*, No. 08-1967, 2009 WL 3762965, at *5 (W.D. Mo. Nov. 9, 2009) (finding

that 21 C.F.R. § 101.100(a)(3)(iii) "exempt[ed]" defendants "from disclosing the presence of BPA in their products" and plaintiffs' claims were preempted because "they would impose disclosure requirements concerning BPA, the exact opposite of the exemption § 343(i)(2) permits"); *Lateef v. Pharmavite LLC*, No. 12-5611, 2012 WL 5269619, at *3 (N.D. Ill. Oct. 24, 2012) (holding that defendant was "exempted from listing on the label the presence of gelatin or animal-based by products because [those were] present in a small amount, and [they] provide[d] 'no technical or functional effect' to the supplement"). Because the disclosure requirement Plaintiff seeks to impose under state law is "not identical to" the labeling requirements imposed by federal law, her failure-to-disclose claims are preempted. 21 U.S.C. § 343-1(a).[8]

## V.    **Plaintiff's Ancillary Claims Fail for Independent Reasons**

For all of the reasons set forth above, Plaintiff's claims should be dismissed in their entirety. Plaintiff's ancillary claims also fail for the following independent reasons.

***Breach of Express Warranty.***[9] Consistent with footnote 6, *supra*, the breach of express warranty claims fail along with the GBL claims. *See, e.g.*, *Solak v. Hain Celestial Grp., Inc.*, No. 17-704, 2018 WL 1870474, at *11 (N.D.N.Y. Apr. 17, 2018) (where alleged misrepresentations or omissions "are insufficient as a matter of law to mislead a reasonable consumer, they cannot be relied upon . . . as grounds for asserting a breach of express warranty"); *Parks*, 2020 WL 832863,

---

[8] Kraft Heinz's compliance with controlling FDA regulations also serves as a "complete defense" to Plaintiff's GBL claims. *See* GBL §§ 349(d), 350-d(b); *Duchimaza v. Niagara Bottling, LLC*, No. 21-6434, 2022 WL 3139898, at *8 (S.D.N.Y. Aug. 5, 2022) ("It is a 'complete defense' to liability under GBL §§ 349 and 350 that an 'act or practice is . . . subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the United States.'").

[9] Plaintiff attempts to assert a breach of express warranty claim under the laws of every state. Compl. ¶ 174. That attempt should be rejected because she lacks standing to do so. *See, e.g.*, *Muir v. Nature's Bounty, Inc.*, No. 15-9835, 2017 WL 4310650, at *8 (N.D. Ill. Sept. 28, 2017) (finding that plaintiff lacked standing to assert claims under the laws of states other than where she resided).

at *2 ("[A] reasonable consumer would not interpret the label 'natural' as a warranty that the Products do not contain any glyphosate, even a negligible amount.").

Additionally, Plaintiff's express warranty claims fail because she did not provide Kraft Heinz notice of the alleged breach before filing suit. *See, e.g.*, *Bynum v. Fam. Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 314–15 (S.D.N.Y. 2022) (dismissing express warranty claim for lack of notice); *Muir*, 2017 WL 4310650, at *4 (same).

And to the extent Plaintiff's express warranty claim is based on non-disclosure, that claim fails because an express warranty is an affirmative statement. N.Y. U.C.C. § 2-313 (express warranty can be "an affirmation of fact or promise" or a "description of the goods"); 810 ILCS 5/2A-210 (same); *see also* *In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*, 966 F. Supp. 1525, 1531 (E.D. Mo. 1997), *aff'd sub nom.* *Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999) ("A breach of express warranty claim . . . cannot be premised on an omission.").

**Magnuson-Moss Warranty Act.** As a threshold matter, the MMWA claim should be dismissed because there are fewer than 100 named plaintiffs in this action. *See* 15 U.S.C. § 2310(d)(3)(C); *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 732 (7th Cir. 2021) (MMWA claim "requires 100 *named* plaintiffs in a putative class"); *accord* *Chen v. Dunkin' Brands, Inc.*, No. 17-3808, 2018 WL 9346682, at *6 n.6 (E.D.N.Y. Sept. 17, 2018), *aff'd*, 954 F.3d 492 (2d Cir. 2020).

Additionally, this claim fails because Plaintiff does not plead a plausible claim for breach of express or implied warranty. *See, e.g.*, *Bynum*, 592 F. Supp. 3d at 315 ("Because Plaintiff has not pled a state law claim of express or implied warranty, his MMWA claim fails."); *Schiesser v. Ford Motor Co.*, No. 16-730, 2016 WL 6395457, at *4 (N.D. Ill. Oct. 28, 2016) ("The ability to sustain a cause of action under the Magnuson-Moss Act is dependent on the existence of an underlying viable state-law warranty claim."). As discussed above, Plaintiff fails to state a breach

of express warranty claim. And any breach of implied warranty claim fails because Plaintiff alleges that she purchased the product from "various retailers including Stop & Shop"—but not from Kraft Heinz—and therefore lacks privity with Kraft Heinz. Compl. ¶¶ 89, 139.[10]

**Fraud/Constructive Fraud.** Consistent with footnote 6, *supra*, Plaintiff's fraud and constructive fraud claims should be dismissed because Plaintiff fails to plausibly allege a material misrepresentation or omission. *See Bynum*, 592 F. Supp. 3d at 316 (fraud claim requires allegation of "a material misrepresentation or omission of fact"); *accord Wienhoff v. Conagra Brands, Inc.*, No. 21-501, --- F. Supp. 3d ----, 2022 WL 4103974, at *8 (S.D. Ill. Sept. 8, 2022) (same).

Plaintiff's fraud claim also fails because Plaintiff does not plausibly allege scienter, *i.e.*, intent to defraud. *See Bynum*, 592 F. Supp. 3d at 316 (fraud claim requires that defendant have made misrepresentation/omission "with the intent to defraud"); *accord Wienhoff*, 2022 WL 4103974, at *8 (fraud claim requires allegation of "defendant's intent that the statement induce the plaintiff to act"). As noted above, Plaintiff fails to plausibly allege that Kraft Heinz knew of the presence of PFAS in the Product before Plaintiff's purchase. Those deficient knowledge allegations, combined with Plaintiff's similarly conclusory intent allegations, warrant dismissal. *See, e.g.*, Compl. ¶ 102 ("Defendant's misrepresentations and omissions were knowing, and it intended to, and did, deceive reasonable consumers, including Plaintiff and Class Members."); *Bynum*, 592 F. Supp. 3d at 316 (finding that plaintiff failed to plausibly plead fraudulent intent and dismissing fraud claim where plaintiff alleged only that "Defendant's fraudulent intent is evinced

---

[10] *See Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016) (noting that New York law "require[s] privity between a plaintiff and defendant with respect to claims for breach of the implied warranties of merchantability and fitness for a particular purpose where the only loss alleged is economic"); *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1121 (N.D. Ill. 2019) ("[U]nder Illinois law, a claim for breach of implied warranty . . . requir[es] privity of contract.") (citations omitted).

by its failure to accurately identify the Product on the front label, when it knew its statements were not true nor accurate"); *accord Wienhoff*, 2022 WL 4103974, at *8 (dismissing fraud claim relying on similarly conclusory intent allegations).

Plaintiff's constructive fraud claim fails because Plaintiff does not plausibly allege that Kraft Heinz is in a fiduciary or confidential relationship with Plaintiff. *See* Compl. ¶ 189 ("Plaintiff and the Class Members relied upon Defendant to make full disclosures based upon the relationship between Plaintiff and Class Members . . . ."); *Apace Commc'ns, Ltd. v. Burke*, 522 F. Supp. 2d 509, 520 (W.D.N.Y. 2007) (dismissing constructive fraud claim because plaintiffs "failed to allege facts showing the existence of any fiduciary or confidential relationship between [plaintiff] and defendants," reasoning that "[t]hese entities and individuals appear to be nothing more than parties to a commercial transaction"); *Tome Engenharia E. Transporrtes, Ltd. v. Malki*, No. 94-7427, 1996 WL 172286, at *7 (N.D. Ill. Apr. 11, 1996) (dismissing constructive fraud claim for failure to plausibly allege a fiduciary relationship).

***Unjust Enrichment.*** Plaintiff's unjust enrichment claim should be dismissed because it simply duplicates Plaintiff's other deficient claims. *See* Compl. ¶ 200 (unjust enrichment claim citing alleged misrepresentations); *Bynum*, 592 F. Supp. 3d at 316 (dismissing unjust enrichment claim premised on same allegations as other claims because "[i]f the unjust enrichment claim is duplicative, and if plaintiff['s] other claims are defective, an unjust enrichment claim cannot remedy the defects") (citation and internal quotation marks omitted); *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (where unjust enrichment claim "rests on the same improper conduct alleged in another claim," unjust enrichment claim "will stand or fall" with that claim).

## **CONCLUSION**

For the foregoing reasons, Kraft Heinz respectfully requests that the Court grant its motion and dismiss Plaintiff's claims with prejudice and without leave to amend.

25

Dated:  February 6, 2023

Respectfully submitted,


By: /s/ Dean N. Panos
        Dean N. Panos (ARDC No. 6203600)
        JENNER & BLOCK LLP
        353 North Clark Street
        Chicago, IL 60654
        Telephone:  (312) 222-9350
        Facsimile:   (312) 527-0484
        DPanos@jenner.com

        Attorneys for Defendant
        The Kraft Heinz Company

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was filed on February 6, 2023 with the Clerk of the Court by using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.


Dated:  February 6, 2023                    By:  _____/s/ Dean N. Panos_____
                                                     Dean N. Panos

27