# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALEXANDRA TORIBIO, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>THE KRAFT HEINZ COMPANY,<br><br>        Defendant. | Case No. 1:22-CV-06639<br><br>The Honorable Lindsay C. Jenkins |

## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT</u>

**JENNER & BLOCK LLP**

Dean N. Panos (ARDC No. 6203600)
353 North Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
Fax: (312) 527-0484
DPanos@jenner.com

Kate T. Spelman (*pro hac vice*)
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199
KSpelman@jenner.com

Attorneys for Defendant
The Kraft Heinz Company

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

I.     PFAS Are Ubiquitous Substances with Unclear Health Effects at Unknown
Levels. ...................................................................................................................... 2

II.    Plaintiff Alleges She Was Economically Harmed by Her Purchase of Strawberry
Kiwi Capri Sun® That Allegedly Contains PFAS at Unspecified Levels. .................... 3

III.   Plaintiff's Amended Complaint Does Not Cure the Deficiencies of the Original
Complaint. ................................................................................................................ 6

LEGAL STANDARD ......................................................................................................... 6

ARGUMENT ...................................................................................................................... 7

I.     Plaintiff Does Not Sufficiently Allege That the Product Contains PFAS. ..................... 7

II.    Plaintiff Lacks Article III Standing ............................................................................ 8

     A.    Plaintiff Lacks Standing to Seek Damages. ....................................................... 9

          1.    Plaintiff Does Not Allege That the Specific Product She
Purchased Contained PFAS. ................................................................. 9

          2.    Plaintiff Fails to Allege an Imminent Risk of Harm
Associated with Consuming the Product. ........................................... 11

     B.    Plaintiff Lacks Standing to Seek Injunctive Relief. ......................................... 13

III.   Plaintiff Can Only Assert Claims Under New York Law ............................................ 14

IV.   Plaintiff Does Not State Plausible Statutory Consumer Protection Claims. ................. 16

     A.    Plaintiff Does Not Plausibly Allege Kraft Heinz Made Any Affirmative
Misrepresentations Regarding the Product. .................................................... 16

     B.    Plaintiff's Omissions Claims Fail Because Plaintiff Does Not Plausibly
Allege Any Basis for Requiring Disclosure ..................................................... 19

     C.    Plaintiff's Omission Claims Also Fail Because She Does Not Plausibly
Allege Materiality. ......................................................................................... 21

     D.    Plaintiff Fails to State a Plausible Claim Based on "Adulteration." ................. 22

V.    Plaintiff's Failure-to-Disclose Claims Are Preempted. ............................................. 24

VI.    Plaintiff's Ancillary Claims Fail for Independent Reasons ........................................... 26

CONCLUSION ................................................................................................................... 28

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Akers v. Costco Wholesale Corp.*,
No. 21-1098, --- F. Supp. 3d ----, 2022 WL 4585417 (S.D. Ill. Sept. 29, 2022) ..................... 14

*Anthony v. Country Life Mfg., L.L.C.*,
No. 02-1601, 2002 WL 31269621 (N.D. Ill. Oct. 9, 2002), *aff'd* 70 F. App'x
379 (7th Cir. 2003) .............................................................................................................. 23, 24

*Apace Commc'ns, Ltd. v. Burke*,
522 F. Supp. 2d 509 (W.D.N.Y. 2007) ....................................................................................... 28

*In re Aqua Dots Prod. Liab. Litig.*,
654 F.3d 748 (7th Cir. 2011) ..................................................................................................... 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................................... 6, 7, 21

*Avery v. State Farm Mut. Auto. Ins. Co.*,
835 N.E.2d 801 (Ill. 2005) ......................................................................................................... 15

*Axon v. Citrus World, Inc.*,
354 F. Supp. 3d 170 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's Nat.*
*Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020) ....................................................................... 18

*Barreto v. Westbrae Nat., Inc.*,
518 F. Supp. 3d 795 (S.D.N.Y. 2021) ......................................................................................... 22

*Bildstein v. MasterCard Int'l, Inc.*,
329 F. Supp. 2d 410 (S.D.N.Y. 2004) ......................................................................................... 21

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*,
No. 08-1967, 2009 WL 3762965 (W.D. Mo. Nov. 9, 2009) ....................................................... 25

*Boysen v. Walgreen Co.*,
No. 11-6262, 2012 WL 2953069 (N.D. Cal. July 19, 2012) ....................................................... 13

*In re Bridgestone/Firestone, Inc.*,
288 F.3d 1012 (7th Cir. 2002) ................................................................................................... 15

*Brown v. Coty, Inc.*,
No. 22-2696, 2023 WL 2691581 (S.D.N.Y. Mar. 29, 2023) ....................................................... 10

*Bynum v. Fam. Dollar Stores, Inc.*,
  592 F. Supp. 3d 304 (S.D.N.Y. 2022)..........................................................................26, 27, 28

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
  761 F.3d 732 (7th Cir. 2014) ..........................................................................................7, 14

*Catalano v. BMW of N. Am., LLC*,
  167 F. Supp. 3d 540 (S.D.N.Y. 2016)....................................................................................27

*Chen v. Dunkin' Brands, Inc.*,
  No. 17-3808, 2018 WL 9346682 (E.D.N.Y. Sept. 17, 2018), *aff'd*, 954 F.3d
  492 (2d Cir. 2020)....................................................................................................................27

*Cleary v. Philip Morris Inc.*,
  656 F.3d 511 (7th Cir. 2011) ..................................................................................................28

*Crichton v. Golden Rule Ins. Co.*,
  576 F.3d 392 (7th Cir. 2009) ..................................................................................................15

*Doss v. Gen. Mills, Inc.*,
  No. 18-61924, 2019 WL 7946028 (S.D. Fla. June 14, 2019), *aff'd*, 816 F.
  App'x 312 (11th Cir. 2020) ....................................................................................................10

*Duchimaza v. Niagara Bottling, LLC*,
  No. 21-6434, --- F. Supp. 3d ----, 2022 WL 3139898 (S.D.N.Y. Aug. 5, 2022)....................26

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013)....................................................................................................16

*Flores v. United Airlines*,
  No. 18-6571, 2021 WL 843415 (N.D. Ill. Mar. 5, 2021) ......................................................15

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000)....................................................................................................................9

*In re Fruit Juice Prods. Mktg. & Sales Practices Litig.*,
  831 F. Supp. 2d 507 (D. Mass. 2011) ....................................................................................13

*Gaminde v. Lang Pharma Nutrition, Inc.*,
  No. 18-300, 2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019) ..................................................10

*In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*,
  966 F. Supp. 1525 (E.D. Mo. 1997), *aff'd sub nom. Briehl v. Gen. Motors
  Corp.*, 172 F.3d 623 (8th Cir. 1999) ......................................................................................27

*In re General Mills Glyphosate Litig.*,
  No. 16-2869, 2017 WL 2983877 (D. Minn. July 12, 2017) ..................................................18

*George v. Starbucks Corp.*,
    857 F. App'x 705 (2d Cir. 2021) ........................................................17

*In re Gerber Prod. Co. Heavy Metals Baby Food Litig.*,
    No. 21-269, 2022 WL 10197651 (E.D. Va. Oct. 17, 2022)................................11, 12

*Gouwens v. Target Corp.*,
    No. 22-50016, 2022 WL 18027524 (N.D. Ill. Dec. 30, 2022)................................19

*Harris v. Pfizer Inc.*,
    586 F. Supp. 3d 231 (S.D.N.Y. 2022) .............................................19, 20

*Harris v. Topco Assocs., LLC*,
    538 F. Supp. 3d 826 (N.D. Ill. 2021) ........................................................25

*Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*,
    No. 18-6664, 2019 WL 2515919 (N.D. Cal. June 18, 2019)................................18

*Herrington v. Johnson & Johnson Consumer Companies, Inc.*,
    No. 09-1597, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ..............................12, 22

*Ibarolla v. Nutrex Rsch., Inc.*,
    No. 12-4848, 2013 WL 672508 (N.D. Ill. Feb. 25, 2013) ......................................19

*Ibarrola v. Kind, LLC*,
    83 F. Supp. 3d 751 (N.D. Ill. 2015) ........................................................16

*Kimca v. Sprout Foods, Inc.*,
    No. 21-12977, 2022 WL 1213488 (D.N.J. Apr. 25, 2022)..........................11, 12, 13

*Kommer v. Bayer Consumer Health*,
    252 F. Supp. 3d 304 (S.D.N.Y. 2017), *aff'd* 710 F. App'x 43 (2d Cir. 2018).........................16

*Koronthaly v. L'Oreal USA, Inc.*,
    374 F. App'x 257 (3d Cir. 2010) ........................................................13

*Lantz v. Am. Honda Motor Co.*,
    No. 06-5932, 2007 WL 1424614 (N.D. Ill. May 14, 2007)................................14, 15

*Lateef v. Pharmavite LLC*,
    No. 12-5611, 2012 WL 5269619 (N.D. Ill. Oct. 24, 2012) ....................................26

*Lee v. Mondelez Int'l, Inc.*,
    No. 22-1127, --- F. Supp. 3d ----, 2022 WL 16555586 (S.D.N.Y. Oct. 28, 2022) ........................................................16, 24

*Manley v. Hain Celestial Grp., Inc.*,
    417 F. Supp. 3d 1114 (N.D. Ill. 2019) ..........................................21, 27

v

*Muir v. Nature's Bounty, Inc.*,
  No. 15-9835, 2017 WL 4310650 (N.D. Ill. Sept. 28, 2017) ..................................................26

*Myers v. Wakefern Food Corp.*,
  No. 20-8470, 2022 WL 603000 (S.D.N.Y. Mar. 1, 2022) ........................................................8

*Onaka v. Shiseido Americas Corp.*,
  No. 21-10665, 2023 WL 2663877 (S.D.N.Y. Mar. 28, 2023) ................................................10

*Parks v. Ainsworth Pet Nutrition, LLC*,
  377 F. Supp. 3d 241 (S.D.N.Y. 2019) ......................................................................18, 21, 26

*Paulsen v. Abbott Lab'ys*,
  No. 15-4144, 2018 WL 1508532 (N.D. Ill. Mar. 27, 2018) ..................................................15

*Payton v. County of Kane*,
  308 F.3d 673 (7th Cir. 2002) ....................................................................................................14

*Pels v. Keurig Dr. Pepper, Inc.*,
  No. 19-3052, 2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) ....................................................10

*In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*,
  588 F. Supp. 2d 527 (S.D.N.Y. 2008) ......................................................................................25

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
  631 F.3d 436 (7th Cir. 2011) ......................................................................................................7

*Santiful v. Wegmans Food Mkts., Inc.*,
  No. 20-2933, 2022 WL 268955 (S.D.N.Y. Jan. 28, 2022) ......................................................8

*Schiesser v. Ford Motor Co.*,
  No. 16-730, 2016 WL 6395457 (N.D. Ill. Oct. 28, 2016) ......................................................27

*Schloegel v. Edgewell Pers. Care Co.*,
  No. 21-631, 2022 WL 808694 (W.D. Mo. Mar. 16, 2022) ....................................................10

*Sherwin v. Samsung Elecs. Am., Inc.*,
  No. 16-7535, 2018 WL 11216896 (N.D. Ill. Mar. 2, 2018) ..................................................20

*Siegel v. Shell Oil Co.*,
  612 F.3d 932 (7th Cir. 2010) ..............................................................................................23, 24

*Silha v. ACT, Inc.*,
  807 F.3d 169 (7th Cir. 2015) ......................................................................................................7

*Simic v. City of Chicago*,
  851 F.3d 734 (7th Cir. 2017) ....................................................................................................13

*In re Sling Media Slingbox Advert. Litig.*,
   202 F. Supp. 3d 352 (S.D.N.Y. 2016) ...................................................................19

*Solak v. Hain Celestial Grp., Inc.*,
   No. 17-704, 2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018) ..................................26

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016), *as revised* (May 24, 2016) ...................................................9

*Suarez v. Playtex Prod.*, Inc.,
   Nos. 08-2703 & 08-3352, 2009 WL 2212315 (N.D. Ill. July 24, 2009) ................7

*Tarzian v. Kraft Heinz Foods Co.*,
   No. 18-7148, 2019 WL 5064732 (N.D. Ill. Oct. 9, 2019) ....................................15

*Tome Engenharia E. Transporrtes, Ltd. v. Malki*,
   No. 94-7427, 1996 WL 172286 (N.D. Ill. Apr. 11, 1996) ....................................28

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) .........................................................................................13

*Turek v. Gen. Mills, Inc.*,
   662 F.3d 423 (7th Cir. 2011) ................................................................................24

*Turnipseed v. Simply Orange Juice Co.*,
   No. 20-8677, 2022 WL 657413 (S.D.N.Y. Mar. 4, 2022) ......................................8

*Twohig v. Shop-Rite Supermarkets, Inc.*,
   519 F. Supp. 3d 154 (S.D.N.Y. 2021) ...................................................................16

*United States v. Anderson Seafoods, Inc.*,
   622 F.2d 157 (5th Cir. 1980) ................................................................................23

*W.B. Wood Mfg. Co. v. United States*,
   286 F. 84 (7th Cir. 1923) ......................................................................................23

*Wallace v. ConAgra Foods, Inc.*,
   747 F.3d 1025 (8th Cir. 2014) ..............................................................................10

*Ware v. Best Buy Stores, L.P.*,
   6 F.4th 726 (7th Cir. 2021) ...................................................................................27

*Weinstein v. eBay, Inc.*,
   819 F. Supp. 2d 219 (S.D.N.Y. 2011) ..............................................................16, 21

*Wienhoff v. Conagra Brands, Inc.*,
   No. 21-501, --- F. Supp. 3d ----, 2022 WL 4103974 (S.D. Ill. Sept. 8, 2022) ..................27, 28

*Womack v. EVOL Nutrition Assocs., Inc.*,
    No. 21-332, 2021 WL 5906340 (N.D.N.Y. Dec. 14, 2021) ...................................................20

*Zahora v. Orgain LLC*,
    No. 21-705, 2021 WL 5140504 (N.D. Ill. Nov. 4, 2021) ...........................................14, 16, 17

**Statutes**

410 ILCS 620/10(a)(1) ...................................................................................................................23

810 ILCS 5/2A-210 .......................................................................................................................27

15 U.S.C. § 2310(d)(3)(C) .............................................................................................................27

21 U.S.C. § 342(a)(1) ....................................................................................................................23

21 U.S.C. § 343-1 .....................................................................................................................24, 26

N.Y. U.C.C. § 2-313 ......................................................................................................................27

N.Y. Agric. & Mkts. § 200 ............................................................................................................23

N.Y. Gen. Bus. § 349 ...............................................................................................................22, 26

N.Y. Gen. Bus. § 350 ...............................................................................................................22, 26

**Other Authorities**

21 C.F.R. § 100.1(c)(4) ..................................................................................................................24

21 C.F.R. § 101.100(a)(3)(iii) ........................................................................................................25

40 C.F.R. § 141.2 .............................................................................................................................5

## INTRODUCTION

This lawsuit is one of a growing number of class actions seeking to hold consumer product companies liable for the alleged presence in their products of a continually expanding list of "undesirable" substances, many of which are ubiquitous in the environment. These substances are not ingredients, but may migrate at low levels into the products (if at all) through the environment or manufacturing process. Like most others of its kind, this case fails to plausibly allege that the substances are present at levels harmful to any consumer. Nonetheless, these cases seek to impose on companies a non-existent disclosure obligation with no limiting principle. Unsurprisingly, many of the cases have been dismissed at the pleading stage. This case should follow suit.

Here, Plaintiff alleges that The Kraft Heinz Company ("Kraft Heinz") misleadingly advertises its Strawberry Kiwi Capri Sun® juice drink (the "Product") because the Product allegedly contains trace amounts of per- and polyfluoralkyl substances (collectively, "PFAS). The FDA has recognized that PFAS are ubiquitous and unavoidable, and Plaintiff asserts only that these substances *may* be harmful to human health at some unspecified concentration. Plaintiff fails to allege *any* details regarding the "independent" PFAS testing she allegedly performed or the specific levels of PFAS she allegedly uncovered in the Product. Nonetheless, Plaintiff claims that Kraft Heinz should be held liable not only for failing to disclose the supposed presence of PFAS, but also for representing that the Product contains no artificial ingredients, flavors, colors, or preservatives, even though PFAS cannot reasonably be characterized as any of these things. Plaintiff's theories of injury and deception are fundamentally flawed and should be dismissed.

*First*, Plaintiff's vague testing allegations—which are within her exclusive knowledge— do not sufficiently establish the presence of PFAS in the Product, which is fatal to all of her claims.

*Second*, Plaintiff lacks Article III standing to seek damages because she does not plausibly allege that the Capri Sun® pouches she purchased contain PFAS, or that she suffered economic

1

injury due to an imminent threat of harm from consumption. Indeed, Plaintiff fails to allege that consumption of the Product has caused or is likely to cause any consumer harm. Though Plaintiff alleges vaguely that her testing revealed PFAS at levels higher than the EPA's recent interim health advisory for *drinking water*, Plaintiff does not explain why an advisory based on the estimated lifetime exposure to drinking water applies to a six-ounce juice pouch. Plaintiff also lacks standing to seek an injunction because she does not plausibly allege she will be misled again.

*Third*, Plaintiff does not state plausible consumer protection claims (and cannot, as a New York resident who purchased the Product in New York, bring a claim under the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA")). She fails to identify any affirmative misrepresentations, relying only on vague references to the Product's positive qualities that say nothing about the presence or absence of PFAS. Plaintiff's omissions-based claims fail because she alleges *no* facts supporting a duty to disclose; nor does she plausibly allege that the purported presence of trace levels of PFAS in the Product is material to reasonable consumers. She also cannot bring a claim based on "adulteration," and, in any event, does not sufficiently allege that the Product was "adulterated" or that she was harmed by such adulteration.

*Fourth*, Plaintiff's failure-to-disclose claims are preempted under 21 C.F.R. § 101.100(a)(3)(iii) because, assuming PFAS are in the Product at all, they are "incidental additives" that the FDA has exempted from any disclosure obligation.

*Finally*, Plaintiff's ancillary claims fail for numerous independent reasons.

Given that Plaintiff has already amended her complaint without curing the deficiencies, Kraft Heinz respectfully requests that the Court dismiss this lawsuit with prejudice.

## **BACKGROUND**

### I. **PFAS Are Ubiquitous Substances with Unclear Health Effects at Unknown Levels.**

According to Plaintiff's own cited sources, PFAS are ubiquitous and unavoidable. *See,*

*e.g.*, Ex. 1 (EPA noting "their widespread use and their persistence in the environment"); Ex. 2 ("widespread use [of PFAS] has left nearly everyone exposed"); Ex. 3 ("You cannot avoid [PFAS] as they are ubiquitous in products and the environment.") (internal quotation marks omitted).[1] Indeed, the CDC has noted that "you probably cannot prevent PFAS exposure altogether," and the European Environment Agency has said that "[i]t is difficult for citizens to totally avoid exposure to PFAS." Exs. 4, 5. PFAS are present in "a variety of food products and in the environment," including "water, air, fish, and soil." Ex. 1. Significantly, due to their ubiquitous nature, PFAS may enter food unintentionally through the environment or packaging. Ex. 6. Despite the ubiquitous and unavoidable nature of PFAS, Plaintiff nonetheless takes the untenable position that their undisclosed presence in consumer products at any level constitutes consumer fraud.

Furthermore, although Plaintiff asserts that PFAS are "known to be harmful to both humans and the environment," Plaintiff repeatedly alleges only a *potential* risk of harm associated with some unknown level of exposure. *See, e.g.*, Dkt. 30 (Amended Complaint ("AC")) ¶¶ 2–3, 45–46. Government agencies and Plaintiff's cited sources agree that the health effects of PFAS remain mostly unknown (*e.g.*, Exs. 1, 7, 8), in part because "[t]here are thousands of PFAS chemicals, and they are found in many different consumer, commercial, and industrial products." Ex. 1.

## II. Plaintiff Alleges She Was Economically Harmed by Her Purchase of Strawberry Kiwi Capri Sun® That Allegedly Contains PFAS at Unspecified Levels.

Plaintiff alleges that she purchased Strawberry Kiwi Capri Sun® from "various retail stores including Stop & Shop locations in Nassau County, New York" at "numerous" times "[d]uring the applicable statute of limitations period." AC ¶ 127. According to Plaintiff, unspecified "independent third-party testing" "detected material levels of numerous PFAS chemicals in the

---

[1] All exhibits cited herein are attached to the concurrently filed Request for Judicial Notice.

Products." *Id.* ¶¶ 63–65. Aside from Plaintiff's conclusory statement that the testing was purportedly "conducted in accordance with accepted industry standards for detecting the presence of PFAS" (*id.* ¶ 64), she provides *no* details regarding such testing, including who conducted the testing, what methodology was used for the testing, or the specifics of what the testing found.

Plaintiff's only factual allegation regarding the PFAS levels allegedly found in the Product relates to Perfluorooctanoic acid ("PFOA"), which Plaintiff alleges was found in the Product at "more than 200 times the EPA's current recommended levels" for drinking water (though she does not disclose the specific level allegedly identified). *Id.* ¶¶ 65, 70, 72 (emphasis omitted).

What Plaintiff refers to as the "EPA's recommended levels" for drinking water are in fact "interim" "lifetime health advisory levels," which are set to "protect all people, *including sensitive populations and life stages*, from adverse health effects resulting from exposure *throughout their lives* to [PFAS] in drinking water." Ex. 9 (emphases added); *see also* Ex. 10 (EPA stating that its PFAS drinking water health advisories "only apply to exposure scenarios involving drinking water" and that "[c]alculation of specific risk levels for foods would require development of entirely different exposure assumptions"). The EPA has indicated these levels "were calculated to offer a margin of protection against adverse health effects" and "take into account other potential sources of exposure to [PFAS] beyond drinking water (for example, food, air, consumer products, etc.), which provides an additional layer of protection." Ex. 9. Until the interim levels were released in June 2022, the EPA's lifetime health advisory level for PFOA was 70 parts per trillion ("ppt"), far more than any amount allegedly found in the Product. *Id.*

Plaintiff does not explain how the EPA's interim lifetime health advisory level for drinking water is relevant to a six-ounce juice pouch, which is particularly notable given that the EPA has indicated that the recommended health advisory levels for other substances can be higher for juice

than drinking water because, as common sense would tell us, "juice consumption levels . . . are . . . lower than drinking water intake." Ex. 11.

Plaintiff also alleges that "on March 14, 2023, the EPA announced that . . . the government intends to set enforceable limits that will require near-zero levels of PFOA in the nation's drinking water." AC ¶ 71. This is incorrect. In fact, the EPA announced that it intends to set the "maximum permissible level of [PFOA] in water which is delivered to any user of a public water system" at 4 ppt, again far above any amount Plaintiff allegedly found in the Product. Ex. 12; 40 C.F.R. § 141.2. And indeed, many municipalities have detected PFOA in their public drinking water at levels significantly higher than any amount allegedly in the Product (though well below the EPA's proposed "maximum permissible level"). For example, the City of Evanston, Illinois detected up to 2.4 ppt of PFOA in its drinking water. Ex. 13. And Washington, D.C. detected up to 3.0 ppt in its drinking water. Ex. 14. Neither city would be required to take any action related to the PFOA in its drinking water systems based on the EPA's proposed regulation, yet Plaintiff seeks to hold Kraft Heinz liable for significantly lower levels allegedly found in its six-ounce juice pouch.

Setting aside Plaintiff's inapt comparison to the EPA's interim lifetime health advisory level for PFOA in drinking water, Plaintiff does not allege that the unspecified PFAS levels allegedly found in the Product have caused or are likely to cause any harm to her or anyone else, or that she or anyone else has suffered or is likely to suffer harm from consumption of the Product.

Based on the alleged presence of PFAS in the Product, Plaintiff challenges the following representations that appear on the Product label and website: (1) statements that the Product is made with "All Natural Ingredients" and has "no artificial colors, flavors, or preservatives" (*e.g.*, AC ¶¶ 4, 5, 9, 26–35, 38); (2) statements that the Product is made without high fructose corn syrup and has "half the sugar" of "regular juice drinks" (*id.* ¶ 4); and (3) the inclusion of "filtered water"

in the Product ingredient list (*e.g.*, *id.* ¶¶ 28–29, 60). Notably, Plaintiff does not allege that (1) PFAS are an ingredient, flavor, color, or preservative in the Product; (2) the Product contains high fructose corn syrup or more sugar than represented; or (3) the Product does not contain filtered water. Rather, Plaintiff claims she "understood" based on the representations that the Product was "safe for use" and "free of harmful, man-made chemicals like PFAS"—although she does not plausibly allege that the Products are *not* "safe for use," or that ensuring consumer goods are entirely free from trace levels of all undesirable substances is even possible. *Id.* ¶ 128.

And, despite alleging no facts supporting her conclusory allegation that Kraft Heinz knew of the presence of PFAS in the Product (and simultaneously alleging that Kraft Heinz "knew *or should have known* that the Product contained PFAS"), Plaintiff nonetheless claims that Kraft Heinz knowingly and intentionally omitted such information. *See, e.g.*, *id.* ¶¶ 11, 145 (emphasis added). Plaintiff alleges she would not have purchased the Product, or alternatively it was worth less than she paid, due to the alleged misrepresentations and omissions. *E.g.*, *id.* ¶¶ 93–94, 124.

## III. <u>Plaintiff's Amended Complaint Does Not Cure the Deficiencies of the Original Complaint.</u>

Kraft Heinz moved to dismiss Plaintiff's original complaint on February 6, 2023. Dkt. 13–14. Rather than oppose the motion, Plaintiff filed her Amended Complaint. Although Plaintiff added substantial length, she did not cure any of the deficiencies Kraft Heinz had identified: she still lacks standing to seek damages and an injunction, and she still fails to state a plausible claim. Thus, Kraft Heinz moves to dismiss her Amended Complaint on the same grounds, as well as additional grounds supporting dismissal of Plaintiff's new claims and theories.

## LEGAL STANDARD

***Rule 12(b)(6).*** "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facts indicating the "mere *possibility* of misconduct" fall short. *Iqbal*, 556 U.S. at 679 (emphasis added). And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Rather, the plaintiff must "allege more by way of factual content to 'nudg[e]' his claim" of unlawful action "across the line from conceivable to plausible." *Id.* at 683 (quoting *Twombly*, 550 U.S. at 570).

**Rule 9(b).** Under Rule 9(b), the plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the who, what, when, where, and how of the fraud." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (citation omitted). Rule 9(b) applies to all claims that "sound[] in fraud," *i.e.*, those that are "premised upon a course of fraudulent conduct." *Id.* (citation omitted). This includes statutory consumer fraud claims and any other claim relying on "allegations of fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011); *see also Suarez v. Playtex Prod.*, Inc., Nos. 08-2703 & 08-3352, 2009 WL 2212315, at *2 (N.D. Ill. July 24, 2009) (applying Rule 9(b) to statutory consumer protection claims).

**Rule 12(b)(1).** Plaintiff "bears the burden of establishing the elements of Article III standing." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). In a facial standing challenge, "courts apply the same analysis used to review whether a complaint adequately states a claim." *Id.*

## ARGUMENT

### I. Plaintiff Does Not Sufficiently Allege That the Product Contains PFAS.

Even assuming that the presence in the Product of any substance Plaintiff views as undesirable is sufficient to support a claim of consumer fraud, Plaintiff must sufficiently allege that the Product contains PFAS. Plaintiff's testing allegations fall short.

Courts have consistently dismissed false advertising claims allegedly supported by

laboratory testing where plaintiffs "fail[ed] to provide any details whatsoever about what th[e] laboratory test entailed." *Myers v. Wakefern Food Corp.*, No. 20-8470, 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022) (dismissing lawsuit where complaint did not "describe the testing methodology followed, the specific date, time, or place of the testing, who conducted the testing, the qualifications of the testers, etc."); *see also, e.g.*, *Santiful v. Wegmans Food Mkts., Inc.*, No. 20-2933, 2022 WL 268955, at *4 (S.D.N.Y. Jan. 28, 2022) (similar); *Turnipseed v. Simply Orange Juice Co.*, No. 20-8677, 2022 WL 657413, at *4 (S.D.N.Y. Mar. 4, 2022) (similar).

Plaintiff's testing allegations are similarly bereft of detail. As in *Myers*, *Santiful*, and *Turnipseed*, Plaintiff fails to disclose in the Amended Complaint who conducted the testing, when and where the testing was conducted, and the methodology of the testing. And although Plaintiff alleges that the testing "detected material levels of numerous PFAS chemicals in the Products, including concerning levels of [PFOA]" that were allegedly "more than 200 times the EPA's current recommended levels" for drinking water, she notably does not allege the actual levels found, which is information indisputably within her exclusive knowledge. AC ¶¶ 63–65, 72 (emphasis omitted). These allegations are insufficient to satisfy Rule 12(b)'s plausibility pleading standard, which requires more than conclusory allegations of "material[ity]," and unquestionably fail under Rule 9(b), which requires that Plaintiff "state with particularity" her allegations. And the details of Plaintiff's alleged testing and what it uncovered are particularly critical here, as Plaintiff does not allege that PFAS are used as an ingredient or otherwise intentionally added to the Product. Because all of Plaintiff's claims rely on bare-bones testing allegations, her entire Amended Complaint must be dismissed.

## II.   <u>Plaintiff Lacks Article III Standing.</u>

Article III requires Plaintiff to "show (1) [she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the

injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (citation omitted). To be "concrete," an injury "must actually exist." *Id.* at 340. Plaintiff lacks standing for damages or injunctive relief.

### A. Plaintiff Lacks Standing to Seek Damages.

Plaintiff lacks standing to seek damages because she does not plausibly allege that the juice *she* purchased had PFAS, or that she suffered economic injury due to an imminent threat of harm.

### 1. *Plaintiff Does Not Allege That the Specific Product She Purchased Contained PFAS.*

Setting aside Plaintiff's fatal failure to sufficiently allege that *any* Strawberry Kiwi Capri Sun® pouch contains PFAS, Plaintiff fails to allege that the *specific* pouches she purchased contained PFAS (or whether PFAS were allegedly found in the juice versus the packaging). Plaintiff asserts only that her unspecified "testing" "detected material levels of numerous PFAS chemicals in *the Products*" and "revealed *the Product* contains PFOA in amounts more than 200 times the EPA's current recommended levels" for drinking water. AC ¶¶ 65, 72 (emphases added and original emphasis omitted). The Amended Complaint generally defines "Product" as "Capri Sun® Strawberry Kiwi juice drink" (*id*. ¶ 1)—not the specific pouches purchased by Plaintiff. And Plaintiff does not allege facts suggesting the levels in the Product allegedly tested are representative of PFAS levels across all Product pouches. Indeed, the ubiquitous nature of PFAS and how they may migrate into food suggest that the presence or levels of PFAS (if any) could be highly variable across pouches.

Courts regularly find that plaintiffs lack standing in false advertising cases where, as here,

they fail to allege that the product they purchased was in fact contaminated.[2] Notably, two courts recently held that plaintiffs failed to establish injury-in-fact in cases based on alleged PFAS contamination where the plaintiffs did not allege that PFAS were found in the particular products they purchased. *See Onaka v. Shiseido Americas Corp.*, No. 21-10665, 2023 WL 2663877, at *5 (S.D.N.Y. Mar. 28, 2023) (finding that plaintiffs had not "plausibly alleged that the presence of PFAS in the Products is so widespread as to render it plausible that any Plaintiff purchased a mislabeled Product"); *Brown v. Coty, Inc.*, No. 22-2696, 2023 WL 2691581, at *5 (S.D.N.Y. Mar. 29, 2023) (finding that if plaintiff was "alleging that Lash Blast may contain PFAS as a result of degradation or impurities, [she] ha[d] not alleged that the products she herself purchased contained PFAS such that she [could] allege an injury in fact").

As in *Onaka*, Plaintiff does not allege facts suggesting that the presence of PFAS in the Product is widespread, and, as in *Brown*, Plaintiff is not alleging (and could not allege) that Kraft Heinz intentionally adds PFAS to the Product such that it could be assumed that PFAS levels are consistent across all pouches. The Court should follow suit and dismiss Plaintiff's claims.

---

[2] *See, e.g.*, *Gaminde v. Lang Pharma Nutrition, Inc.*, No. 18-300, 2019 WL 1338724, at *2 (N.D.N.Y. Mar. 25, 2019) ("speculation to allege that because two CVS Krill Oil bottles in a USDA study were found to have less than the stated amount of Omega-3 Krill Oil, the bottle that [plaintiff] purchased must as well"); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) (dismissing complaint challenging "100% kosher" hot dogs because plaintiffs "g[a]ve no reason to think *all* the beef marked as kosher . . . did not meet kosher standards" and it was thus "entirely possible, maybe probable, that the packages of beef they personally purchased and consumed" were kosher); *Schloegel v. Edgewell Pers. Care Co.*, No. 21-631, 2022 WL 808694, at *2–3 (W.D. Mo. Mar. 16, 2022) (no standing where plaintiff "failed to allege that she actually purchased Banana Boat Sunscreen products which were adulterated with benzene"); *Doss v. Gen. Mills, Inc.*, No. 18-61924, 2019 WL 7946028, at *2 (S.D. Fla. June 14, 2019), *aff'd*, 816 F. App'x 312 (11th Cir. 2020) (no standing where plaintiff did not "allege that the Cheerios she herself bought actually contain[ed] any glyphosate"); *Pels v. Keurig Dr. Pepper, Inc.*, No. 19-3052, 2019 WL 5813422, at *5 (N.D. Cal. Nov. 7, 2019) (plaintiff "failed to plead a particularized injury by failing to plead the water *he* purchased contained violative arsenic levels").

      2.    *Plaintiff Fails to Allege an Imminent Risk of Harm Associated with Consuming the Product.*

Plaintiff claims she suffered economic injury due to her purchase of juice that allegedly contains "toxic" substances "associated with numerous health concerns." AC ¶ 8. Whether Plaintiff pursues a benefit of the bargain or price premium theory of injury (*id.* ¶¶ 94, 103), "underlying each approach is the basic principle that economic harm results when the purchase price of a product exceeds the actual value of the product after taking into account a defendant's improper actions." *In re Gerber Prod. Co. Heavy Metals Baby Food Litig.*, No. 21-269, 2022 WL 10197651, at *5 (E.D. Va. Oct. 17, 2022). Plaintiff cannot establish "economic harm" sufficient to confer standing because she does not plausibly allege an imminent risk of harm from consuming the Product, and thus cannot show her purchase price "exceeds the actual value" of the Product.

Numerous courts have held that plaintiffs lack standing to pursue false advertising cases challenging allegedly adulterated products where the plaintiffs fail to allege they were harmed or faced an imminent risk of harm from consuming the product at issue. Two recent baby food cases are instructive. In *Kimca v. Sprout Foods, Inc.*, the plaintiffs alleged they would not have purchased or would have paid less for the defendant's baby food products if they had known those products contained heavy metals. No. 21-12977, 2022 WL 1213488, at *8 (D.N.J. Apr. 25, 2022). The court found that plaintiffs failed to allege injury under a price premium theory because they did "not identify any other comparable, cheaper, or safer products to show that they, in fact, paid a premium." *Id.* Additionally, the court rejected the benefit of the bargain theory because, although the plaintiffs alleged "(1) that the Baby Food Products contain heavy metals and (2) that elevated levels of heavy metals can be unsafe and dangerous," they did not "connect these two allegations by establishing that the levels of heavy metals in the Baby Food Products are unsafe." *Id.* Notably, the court rejected the plaintiffs' comparison of the heavy metal levels supposedly

found in the challenged baby food products with the FDA and EPA's heavy metal limits for bottled and drinking water, as the complaint did "not contain any background information or explanation indicating that these are apt comparisons for use in the context of baby food." *Id.* at *6.

The *Gerber* court reached a similar conclusion. As in *Kimca*, the plaintiffs alleged that heavy metals were present in the defendant's baby foods and that exposure to heavy metals posed "dangers to human health," but failed to plausibly allege that the heavy metals *in the defendant's baby food products* caused injury or created an "imminent risk" of injury to their children. 2022 WL 10197651, at *7. The court thus held that the plaintiffs failed to allege injury sufficient to confer standing under a benefit of the bargain theory of harm. *Id.* at *8, 10. Relatedly, the court rejected the price premium theory because the plaintiffs did "not allege how much they paid for the Baby Food Products, how much they would have paid had the material facts been disclosed, or any other details regarding the alleged price premium." *Id.* at *10; *see also Herrington v. Johnson & Johnson Consumer Companies, Inc.*, No. 09-1597, 2010 WL 3448531, at *1, 3 (N.D. Cal. Sept. 1, 2010) (holding that "[t]he risk Plaintiffs plead[ed] [was] too attenuated and not sufficiently imminent to confer Article III standing" where plaintiffs alleged that defendants failed to disclose "probable carcinogens and other unsafe substances" in their children's bath products).

Like the plaintiffs in *Kimca*, *Gerber*, and *Herrington*, Plaintiff alleges the presence of a contaminant—PFAS—in the Product as well as potential health risks associated with general exposure to that contaminant at unspecified levels. Critically, however, Plaintiff does not allege that *she* faces an imminent risk of harm from the levels of PFAS allegedly found *in the Product*. Plaintiff's attempt to compare the alleged levels of PFOA in the Product with the EPA's interim health advisory level for drinking water does not plausibly bridge this gap, as she does not allege how this level—which is based on an individual's anticipated lifetime exposure to drinking

12

water—has any relevance to Capri Sun® juice pouches. As in *Kimca*, the Court should reject Plaintiff's baseless comparison considering her failure to allege "any background information or explanation indicating" why such comparison is "apt" in this context (which it plainly is not). 2022 WL 1213488, at *6. Accordingly, Plaintiff fails to allege injury-in-fact because she does not allege that she received a product other than what she bargained for or worth any less than what she paid.

Other courts have held that plaintiffs failed to establish economic injury sufficient to confer Article III standing under similar circumstances. *See, e.g.*, *In re Fruit Juice Prods. Mktg. & Sales Practices Litig.*, 831 F. Supp. 2d 507, 512 (D. Mass. 2011) (no standing in case alleging failure to disclose presence of lead because "Plaintiffs paid for fruit juice, and they received fruit juice, which they consumed without suffering harm"); *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010) (plaintiff's "subjective allegation that the trace amounts of lead in the lipsticks [were] unacceptable to her" was "not an injury-in-fact sufficient to confer Article III standing"); *Boysen v. Walgreen Co.*, No. 11-6262, 2012 WL 2953069, at *5, 7 (N.D. Cal. July 19, 2012) (no standing where plaintiff did not allege that "any person ha[d] ever been injured" by defendant's fruit juice or that "consumption" of the juice "may cause physical harm," and rejecting comparison to toxin guidelines for bottled water). This Court should reach the same conclusion.[3]

**B.      Plaintiff Lacks Standing to Seek Injunctive Relief.**

To pursue injunctive relief, Plaintiff must allege that she faces "a real and immediate threat of future injury" from Kraft Heinz's conduct. *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th

---

[3] *In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011), is distinguishable because all products at issue there were recalled given that children had actually been injured, and the products were therefore worthless. Moreover, the Supreme Court has since held that "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a separate concrete harm." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210–11 (2021).

Cir. 2017) (citation and internal quotation marks omitted). In the Seventh Circuit, consumer plaintiffs lack standing to seek injunctive relief once they are aware of alleged misrepresentations or omissions, as they are unlikely to be harmed again in the future. *See, e.g.*, *Camasta*, 761 F.3d at 740–41; *Zahora v. Orgain LLC*, No. 21-705, 2021 WL 5140504, at *6 (N.D. Ill. Nov. 4, 2021).

Taking Plaintiff's allegations as true, she is now aware of the alleged presence of PFAS in the Product, and she is therefore unlikely to be harmed again in the future. Plaintiff's allegation that she "continues to desire to purchase the Product from Defendant if she can rely on that Product to be safe and free from any artificial ingredients" does not change that conclusion. AC ¶ 130; *see Akers v. Costco Wholesale Corp.*, No. 21-1098, --- F. Supp. 3d ----, 2022 WL 4585417, at *7 (S.D. Ill. Sept. 29, 2022) (finding plaintiff lacked standing to seek injunctive relief even though he alleged he intended to purchase the product again, as he was "aware of the . . . label and relative ingredients and would not likely be harmed by such representation in the future").[4]

## III.    Plaintiff Can Only Assert Claims Under New York Law.

As a threshold matter, New York law should apply to Plaintiff's claims. Under Illinois choice of law analysis, courts must "select the law of the jurisdiction that has the 'most significant relationship' to the events out of which the suit arose, and to the parties." *Lantz v. Am. Honda Motor Co.*, No. 06-5932, 2007 WL 1424614, at *4 (N.D. Ill. May 14, 2007) (citation omitted). "For tort claims, courts look to (1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered." *Id.* (citation omitted). "For contract claims, courts consider (1) the place of contracting; (2) the

---

[4] Plaintiff's purported representation of a class of purchasers also does not help her. *See Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) (noting that "[s]tanding cannot be acquired through the back door of a class action," and a named plaintiff cannot "piggy-back on the injuries of the unnamed class members") (citation omitted); *see also Zahora*, 2021 WL 5140504, at *6.

place of the negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile and nationality of the parties." *Id.*

In a case involving alleged product misrepresentations, the injury occurs and the relationship is centered where the plaintiff purchases and uses the product, and the alleged fraud occurs "at the point[] of purchase." *Id.* at *5; *see also In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir. 2002) ("If recovery for breach of warranty or consumer fraud is possible, the injury is decidedly where the *consumer* is located, rather than where the seller maintains its headquarters."). And the place of purchase also constitutes the place of contracting, negotiation, performance, and subject matter of the contract. *See Lantz*, 2007 WL 1424614, at *5. Thus, New York law should apply here because Plaintiff resides and purchased the Product in New York. AC ¶ 127; *see, e.g., Lantz*, 2007 WL 1424614, at *5 (finding laws of states of plaintiffs' residence/purchase applied, rather than law of defendant's domicile); *Paulsen v. Abbott Lab'ys*, No. 15-4144, 2018 WL 1508532, at *12–13 (N.D. Ill. Mar. 27, 2018) (finding law of state of plaintiff's residence/purchase/use of product applied).

Further, Plaintiff cannot bring a claim under the ICFA. The Illinois Supreme Court has held that the ICFA does not "apply to fraudulent transactions which take place outside Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 853 (Ill. 2005). Courts consistently hold that plaintiffs who purchased products or reside outside of Illinois cannot bring ICFA claims. *See, e.g., Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 397 (7th Cir. 2009); *Flores v. United Airlines*, No. 18-6571, 2021 WL 843415, at *6–7 (N.D. Ill. Mar. 5, 2021); *Tarzian v. Kraft Heinz Foods Co.*, No. 18-7148, 2019 WL 5064732, at *2–3 (N.D. Ill. Oct. 9, 2019). Notably, *Tarzian* involved the same defendant and the same product at issue here. There is no reason for this Court to reach

a different result—Plaintiff's ICFA claim should be dismissed.[5]

## IV. Plaintiff Does Not State Plausible Statutory Consumer Protection Claims.

### A. Plaintiff Does Not Plausibly Allege Kraft Heinz Made Any Affirmative Misrepresentations Regarding the Product.

To state a claim under sections 349 and 350 of the New York General Business Law ("GBL") as well as for deceptive practices under the ICFA (assuming Plaintiff can state an ICFA claim at all), Plaintiff must show that the challenged representations and omissions "were likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *accord Lee v. Mondelez Int'l, Inc.*, No. 22-1127, --- F. Supp. 3d ----, 2022 WL 16555586, at *10 (S.D.N.Y. Oct. 28, 2022); *Zahora*, 2021 WL 5140504, at *3 (under ICFA, a plaintiff "must plausibly allege that the Product's label was 'likely to deceive reasonable consumers'"). Importantly, the "applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled." *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011). Because the "reasonable consumer" standard does not hinge on a given consumer's subjective views, this Court may "dismiss the complaint if the challenged statement[s]" are "not misleading as a matter of law." *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015); *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 311 (S.D.N.Y. 2017), *aff'd* 710 F. App'x 43 (2d Cir. 2018) (reasonable consumer inquiry is "objective" and "may be resolved as a matter of law on a motion to dismiss").[6] Plaintiff cannot meet this standard.

---

[5] Nonetheless, in the event the Court disagrees that New York applies, Kraft Heinz addresses Plaintiff's claims under both Illinois and New York law for completeness.

[6] Because Plaintiff's common law claims are all premised on the same alleged misrepresentations and omissions, those claims all fail along with the statutory consumer claims. *See, e.g.*, *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 165 (S.D.N.Y. 2021) (dismissing claims for breach of express and implied warranty, negligent misrepresentation, fraud, and unjust enrichment because plaintiffs "failed to allege that the Product's labeling would be likely to deceive or mislead

Based on the alleged presence of PFAS in the Product, Plaintiff challenges representations on the Product label and website regarding the use of natural ingredients and filtered water; the absence of artificial colors, flavors, preservatives, and high fructose corn syrup; and the sugar content. *See supra*, at pp. 5–6. Despite not alleging that PFAS are ingredients, flavors, colors, or preservatives, or that the other challenged statements are untrue, Plaintiff nonetheless claims the representations are misleading because she "understood" from them that the Product was "free of harmful, man-made chemicals like PFAS." AC ¶ 128. Plaintiff's theory of deception should be rejected because nothing about the challenged representations promises the absence of PFAS.

*George v. Starbucks Corp.* is instructive. No. 19-6185, 2020 WL 6802955 (S.D.N.Y. Nov. 19, 2020), *aff'd*, 857 F. App'x 705 (2d Cir. 2021). There, the plaintiffs alleged that Starbucks misleadingly marketed itself "as a high-end coffee brand making use of quality ingredients" when it used harmful pesticides inside its stores. *Id.* at *1. The court dismissed the case (including GBL claims) because the only actionable statement the plaintiffs challenged—"no artificial dyes or flavors"—could not support a claim for deception, as the pesticide at issue was "not an artificial dye or flavor," and "[n]o reasonable consumer would understand that statement to convey any information about the company's use or non-use of pesticides in its stores." *Id.* at *2. The Second Circuit upheld the dismissal, finding that "[n]o reasonable consumer would believe" that statements "refer[ring] only to how Starbucks sources its products and crafts its coffee and the ingredients it uses in its baked goods" "communicate anything about the use of pesticide in Starbucks's stores." *George v. Starbucks Corp.*, 857 F. App'x 705, 706 (2d Cir. 2021).

The glyphosate cases are similarly on point. In those cases, as here, the plaintiffs attacked

---

a reasonable consumer"); *Zahora*, 2021 WL 5140504, at *5 (collecting cases and finding that "[a]bsent a plausible allegation of deception," claims for breach of express and implied warranty, negligent misrepresentation, fraud, and unjust enrichment also failed).

the defendants' "natural" labeling statements as misleading because the challenged products contained trace amounts of a contaminant (glyphosate, a pesticide). Court after court rejected this theory of deception. In *Axon v. Citrus World, Inc.*, the court held that it was not misleading to call the product "natural" because "[g]lyphosate . . . is not an 'ingredient' added to defendant's products; rather, it is a substance introduced through the growing process." 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020). The court in *Parks v. Ainsworth Pet Nutrition, LLC* likewise held that "a reasonable consumer would not be so absolutist as to require that 'natural' means there is no glyphosate, even an accidental and innocuous amount, in the Products." 377 F. Supp. 3d 241, 247 (S.D.N.Y. 2019); *see also In re General Mills Glyphosate Litig.*, No. 16-2869, 2017 WL 2983877, at *6 (D. Minn. July 12, 2017) ("Made with 100% Natural Whole Grain Oats" did not "mean[] that there is no trace glyphosate" in the product, and it would be implausible for a reasonable consumer to "so interpret the label"); *Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, No. 18-6664, 2019 WL 2515919, at *3 (N.D. Cal. June 18, 2019) (a reasonable consumer would not "understand 'Natural' or 'All Natural Ingredients' to mean the utter absence of residual pesticides").

Here too, the challenged representations communicate nothing about the presence or absence of a purported contaminant in the Product. Representations that the Product contains only natural ingredients, colors, flavors, and preservatives do not promise the absence of PFAS, which are ubiquitous in the environment and are not alleged to be an "'ingredient' added to defendant's products" (*Axon*, 354 F. Supp. 3d at 183), or a color, flavor, or preservative. Similarly, Plaintiff does not allege that the Product contains more sugar than advertised or any high fructose corn syrup or that it does not contain filtered water, and those representations are entirely unrelated to PFAS. Although Plaintiff alleges that "[c]ertain technologies have been found to remove PFAS

18

from drinking water," she does not (and could not) allege that reasonable consumers understand the general term "filtered water" as a representation about the use of those technologies.  AC ¶ 59.[7]

Plaintiff alleges she "understood" based on the challenged representations that the Product was "safe for use" and "free of harmful, man-made chemicals like PFAS," AC ¶ 128, but that impression is not "reasonably traceable to a misleading statement from" Kraft Heinz (nor has Plaintiff plausibly alleged that the Product is unsafe or harmful in any way).  *Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 243–44 (S.D.N.Y. 2022); *accord Gouwens v. Target Corp.*, No. 22-50016, 2022 WL 18027524, at *4 (N.D. Ill. Dec. 30, 2022) (dismissing ICFA claim where it was "based on a fanciful and unreasonable interpretation of the Product's label").  Absent such a "misleading statement," Plaintiff's affirmative misrepresentation claims must be dismissed.

### B.    Plaintiff's Omissions Claims Fail Because Plaintiff Does Not Plausibly Allege Any Basis for Requiring Disclosure.

To state a plausible GBL or ICFA claim based on omissions, Plaintiff must plausibly allege that Kraft Heinz failed to disclose PFAS that it knew was in the Product.  *See Harris*, 586 F. Supp. 3d at 244 (to state a GBL omissions claim, a plaintiff "must allege that 'the business alone possesses material information that is relevant to the consumer and fails to provide this information'") (citation omitted); *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016) (noting that "a defendant's failure to reveal facts about which even it was unaware at the time will not lead to liability" and dismissing GBL claim where plaintiffs "failed to plead facts sufficient to lead to the reasonable inference" of knowledge); *Ibarolla v. Nutrex Rsch., Inc.*, No. 12-4848, 2013 WL 672508, at *3 (N.D. Ill. Feb. 25, 2013) (same under ICFA).

---

[7] Plaintiff also alleges that Kraft Heinz made representations that the Product was "unadulterated." As set forth below, the Product is not adulterated, but regardless, Plaintiff does not identify any specific representation that the Product is "unadulterated."  AC ¶ 12.

Here, Plaintiff has not alleged any basis to require disclosure. As discussed, Plaintiff alleges no facts suggesting that the PFAS is consistently found in Capri Sun® juice pouches, which is critical given that Plaintiff does not allege Kraft Heinz added PFAS as an ingredient or intended component of the juice, and the FDA recognizes that PFAS can enter food unintentionally. Ex. 6. Nor does Plaintiff allege the specific levels of PFAS in the Product or what standard applies to the disclosure obligation she seeks to impose. Rather, Plaintiff alleges that Kraft Heinz can be held liable for failing to disclose PFAS because she allegedly identified *some* level of PFAS in *some* sample of the Product. This is not and cannot be the law.

Plaintiff's allegations of knowledge are also plainly insufficient. Plaintiff alleges only that Kraft Heinz "knew, *or at minimum should have known*" of the alleged presence of PFAS. AC ¶¶ 77, 87 (emphasis added). That is not enough. *See Sherwin v. Samsung Elecs. Am., Inc.*, No. 16-7535, 2018 WL 11216896, at *4 (N.D. Ill. Mar. 2, 2018) (allegation that defendant "should have known" of defect because it was a "manufacturer and industry leader" did not sufficiently establish knowledge). Moreover, even assuming PFAS were present in the Product, Plaintiff fails to allege any facts supporting her conclusory allegations of Kraft Heinz's knowledge, and the underlying facts suggest precisely the opposite. *See* AC ¶ 126 (alleging that Kraft Heinz "made no reasonable effort to test its Product for PFAS"); *Harris*, 586 F. Supp. 3d at 244 (dismissing GBL omissions claim where conclusory allegations did not "plausibly establish that Pfizer knew about any nitrosamine contamination in the medication that the plaintiffs purchased at the time they purchased it"); *Womack v. EVOL Nutrition Assocs., Inc.*, No. 21-332, 2021 WL 5906340, at *10 (N.D.N.Y. Dec. 14, 2021) (dismissing GBL omissions claim where "sole allegation regarding Defendant's knowledge" was "vague and conclusory"); *Sherwin*, 2018 WL 11216896, at *5 (dismissing ICFA omissions claim where plaintiff failed to plausibly "allege SEA had knowledge

of the purported defect at the time she made her purchase").[8]

### C. Plaintiff's Omission Claims Also Fail Because She Does Not Plausibly Allege Materiality.

Plaintiff's omissions claims also fail because she does not plausibly allege that the alleged trace amounts of PFAS found in the Product would be material to reasonable consumers. *See Weinstein*, 819 F. Supp. 2d at 227; *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1118 (N.D. Ill. 2019). "An omission is material only 'where a buyer would have acted differently knowing the information.'" *Manley*, 417 F. Supp. 3d at 1118 (citation omitted); *see also Bildstein v. MasterCard Int'l, Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004) ("A material claim is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.") (citations and internal quotation marks omitted). Here, Plaintiff's conclusory allegations of materiality (*e.g.*, AC ¶¶ 65, 87) are rendered implausible by her failure to allege that the Product causes or even creates a risk of harm.

Courts regularly find that the presence of trace contaminants is not material to consumers where plaintiffs fail to plausibly allege that use of the products would cause harm. *Parks* is illustrative. There, the plaintiff alleged that the defendant mislabeled dog food as "natural," even though it contained trace amounts of the pesticide glyphosate. 377 F. Supp. 3d at 244. The court dismissed the suit, reasoning that the "presence of negligible amounts of glyphosate in a dog food product that do[es] not have harmful, 'toxic,' or 'carcinogenic' effects is not likely to affect consumers' decisions in purchasing the product and is thus not material." *Id.* at 248. The *Herrington* court similarly found that the plaintiffs failed to sufficiently plead materiality in

---

[8] Although Rule 9(b) permits knowledge to be alleged "generally," the Supreme Court has made clear that a plaintiff cannot "plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Iqbal*, 556 U.S. at 687.

connection with their claim that the defendants failed to disclose "probable carcinogens and other unsafe substances" in children's bath products because they had "not averred facts that show that the levels of these substances caused them or their children harm." 2010 WL 3448531, at *1, 8.

Here, as in *Parks* and *Herrington*, Plaintiff does not allege that the levels of PFAS allegedly found in the Product have caused or are likely to cause any harm to consumers. *See supra*, at p. 3. Plaintiff alleges only that the levels of PFOA in the Product are "more than 200 times" the EPA's interim lifetime health advisory level for drinking water, but, as explained above, that comparison is meaningless. AC ¶¶ 70, 72. The alleged level of PFOA in the Product is lower than levels found in drinking water throughout the United States and lower than the maximum permissible level the EPA intends to set for public drinking water systems. *See supra*, at pp. 4–5. Moreover, Plaintiff's cited sources make clear that PFAS are ubiquitous and cannot be avoided. Given this backdrop, the alleged presence of PFAS in the Product at unspecified trace levels cannot be material to reasonable consumers, requiring dismissal of Plaintiff's omissions claims.

### D. Plaintiff Fails to State a Plausible Claim Based on "Adulteration."

As an initial matter, a GBL claim cannot be premised on "adulteration" absent plausible allegations of deception. *See* AC ¶¶ 184, 195. Because the GBL covers only "[d]eceptive acts or practices" and "[f]alse advertising," Plaintiff's failure to plausibly allege any actionable misrepresentations and omissions is fatal to her GBL claims (even if she could plausibly allege "adulteration," which she cannot). GBL §§ 349(a), 350; *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 805 (S.D.N.Y. 2021) ("To state a GBL claim, the challenged act must be 'inherently deceptive,' and 'such acts cannot be re-characterized as 'deceptive' simply on the grounds that they violate another statute which does not allow for private enforcement.'") (citations omitted).

And even if Plaintiff could potentially maintain an ICFA claim premised on "adulteration"

22

absent deception, such a claim cannot stand here. The ICFA covers "unfair" conduct, which has been defined as conduct that (1) violates public policy; (2) is so oppressive that the consumer has little choice but to submit; and (3) causes consumers substantial injury. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). Although the claim need not satisfy all three criteria, the degree to which it satisfies each is relevant to the analysis. *See id.*; *Anthony v. Country Life Mfg., L.L.C.*, No. 02-1601, 2002 WL 31269621, at *2 (N.D. Ill. Oct. 9, 2002), *aff'd* 70 F. App'x 379 (7th Cir. 2003). Of these criteria, Plaintiff seems to rely solely on an alleged violation of public policy, contending that the Product is "adulterated" under federal, New York, and Illinois regulations. This is not enough, standing alone, to constitute "unfair" conduct. *See Anthony*, 2002 WL 31269621, at *2 (defendant's "act of producing and marketing adulterated food d[id] not rise to the level required by Illinois courts to establish an unfair practice").

And even if that were enough, Plaintiff does not plausibly allege that the Product is "adulterated" under those regulations. The relevant regulations declare a food to be adulterated "[i]f it bears or contains any poisonous or deleterious substance which may render it injurious to health." 21 U.S.C. § 342(a)(1); 410 ILCS 620/10(a)(1); N.Y. Agric. & Mkts. § 200; AC ¶¶ 107, 121. "The 'may render' standard has been interpreted to mean that there is a reasonable possibility of injury to the consumer." *United States v. Anderson Seafoods, Inc.*, 622 F.2d 157, 159 (5th Cir. 1980). Plaintiff has not alleged that she was injured by the Product, or that consumers face a "reasonable probability of injury" from the Product where the alleged amount of PFAS in the Product falls below the EPA's proposed maximum permissible level for drinking water. As discussed above, at most Plaintiff alleges that PFAS at unspecified levels may be associated with various risks, which cannot establish adulteration. *See W.B. Wood Mfg. Co. v. United States*, 286 F. 84, 86 (7th Cir. 1923) (finding arsenic in soda did not constitute a "deleterious ingredient,

injurious to health" under earlier version of a federal adulteration statute, as "[a]rsenic is found in infinitesimal quantities in so many articles of food that it has been said that the air we breathe, the water we drink, the smoke and dust we inhale, and all the foods we consume contain arsenic").

Furthermore, Plaintiff cannot plead a statutory consumer protection claim premised on "adulteration" because she does not plausibly allege that the purported "adulteration" caused her alleged economic injury. *See Siegel*, 612 F.3d at 935 ("[T]o prevail under ICFA, a plaintiff must demonstrate that the defendant's conduct is the proximate cause of the injury."); *Lee*, 2022 WL 16555586, at *10 (same under GBL §§ 349 and 350). Instead, she alleges that she suffered economic injury from alleged misleading advertising, which is not sufficiently connected to the alleged "adulteration" to support a claim. *See, e.g.*, AC ¶¶ 129, 225; *Anthony*, 2002 WL 31269621, at *2 (dismissing ICFA claim where plaintiff "failed to allege any facts to demonstrate that Country Life's manufacturing of adulterated nutrition bars [was] the *proximate* cause of her injuries").

## V.    **Plaintiff's Failure-to-Disclose Claims Are Preempted.**

Plaintiff's omissions claims are also preempted by The Nutrition Labeling & Education Act, which expressly provides that "no State or political subdivision of a State may directly or indirectly establish . . . any requirement for . . . labeling of food . . . that is not identical to the requirement[s]" imposed by federal law. 21 U.S.C. § 343-1(a)(2). The phrase "'[n]ot identical to' does not refer to the specific words in the requirement but instead means that the State requirement directly or indirectly imposes obligations or contains provisions" that are "not imposed by or contained in" or that "[d]iffer from those specifically imposed by or contained in" the statute or the FDA's implementing regulations. 21 C.F.R. § 100.1(c)(4).

Plaintiff cannot avoid this preemption provision by claiming her asserted disclosure requirements are "consistent with the requirements imposed by the Food, Drug, and Cosmetic Act," because "consistency is not the test; identity is." *Turek v. Gen. Mills, Inc.*, 662 F.3d 423,

24

427 (7th Cir. 2011). Put another way, "[s]tates can impose requirements that are identical to those imposed by the FDCA, but not different from or more burdensome than those requirements." *Harris v. Topco Assocs., LLC*, 538 F. Supp. 3d 826, 831 (N.D. Ill. 2021); *accord In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008).

Plaintiff does not identify any FDA regulation requiring the disclosure of PFAS on food labeling, because none exists. To the contrary, the FDA expressly exempts manufacturers from having to disclose the presence of "[i]ncidental additives that are present in a food at insignificant levels and do not have any technical or functional effect in that food," including "[s]ubstances migrating to food from equipment or packaging or otherwise affecting food that are not food additives as defined in section 201(s) of the act." 21 C.F.R. § 101.100(a)(3)(iii).

Any PFAS allegedly found in the Product would constitute incidental additives that need not be disclosed under the FDA's regulations. Plaintiff does not allege that PFAS have any technical or functional effect in the Product. And because she fails to allege any actual levels of PFAS in the Product—even after amending her complaint—she cannot argue that PFAS are found in any more than "insignificant levels."[9] Further, as noted above, the FDA has indicated that PFAS enter food through the environment or packaging, and thus would be considered "[s]ubstances migrating to food from . . . packaging or otherwise affecting food." 21 C.F.R. § 101.100(a)(3)(iii).

Other courts have found preemption under the same regulation where plaintiffs sought to require disclosure of other incidental additives. *See In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*, No. 08-1967, 2009 WL 3762965, at *5 (W.D. Mo. Nov. 9, 2009) (finding that 21 C.F.R. § 101.100(a)(3)(iii) "exempt[ed]" defendants "from disclosing the presence of BPA

---

[9] Plaintiff's conclusory allegation that "the quantity of PFAS in the Product is significant and cannot reasonably be considered de minimis" is unsupported by any factual allegations. AC ¶ 74.

in their products" and plaintiffs' claims were preempted because "they would impose disclosure requirements concerning BPA, the exact opposite of the exemption § 343(i)(2) permits"); *Lateef v. Pharmavite LLC*, No. 12-5611, 2012 WL 5269619, at *3 (N.D. Ill. Oct. 24, 2012) (same as to gelatin and animal-based by products that were "present in a small amount" and "provide[d] 'no technical or functional effect' to the supplement" at issue). Because the disclosure requirement Plaintiff seeks to impose under state law is "not identical to" the labeling requirements imposed by federal law, her failure-to-disclose claims are preempted. 21 U.S.C. § 343-1(a).[10]

## VI.  Plaintiff's Ancillary Claims Fail for Independent Reasons

For all the reasons set forth above, Plaintiff's claims should be dismissed in their entirety. Plaintiff's ancillary claims also fail for the following independent reasons.

***Breach of Express Warranty.*** Consistent with footnote 6, *supra*, the breach of express warranty claims fail along with the statutory consumer protection claims. *See, e.g.*, *Solak v. Hain Celestial Grp., Inc.*, No. 17-704, 2018 WL 1870474, at *11 (N.D.N.Y. Apr. 17, 2018) (where alleged misrepresentations or omissions "are insufficient as a matter of law to mislead a reasonable consumer, they cannot be relied upon . . . as grounds for asserting a breach of express warranty"); *Parks*, 2020 WL 832863, at *2 ("[A] reasonable consumer would not interpret the label 'natural' as a warranty that the Products do not contain any glyphosate, even a negligible amount."). Plaintiff's express warranty claims also fail because she did not provide Kraft Heinz notice of the alleged breach before filing suit. *See, e.g.*, *Bynum v. Fam. Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 314–15 (S.D.N.Y. 2022) (dismissing express warranty claim for lack of notice); *Muir v. Nature's Bounty, Inc.*, No. 15-9835, 2017 WL 4310650, at *4 (N.D. Ill. Sept. 28, 2017) (same).

---

[10] Kraft Heinz's compliance with controlling FDA regulations also serves as a "complete defense" to Plaintiff's GBL claims. *See* GBL §§ 349(d), 350-d(b); *Duchimaza v. Niagara Bottling, LLC*, No. 21-6434, --- F. Supp. 3d ----, 2022 WL 3139898, at *8 (S.D.N.Y. Aug. 5, 2022).

And to the extent Plaintiff's express warranty claim is based on non-disclosure, that claim fails because an express warranty is an affirmative statement. N.Y. U.C.C. § 2-313 (express warranty can be "an affirmation of fact or promise" or a "description of the goods"); 810 ILCS 5/2A-210 (same); *see also In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*, 966 F. Supp. 1525, 1531 (E.D. Mo. 1997), *aff'd sub nom. Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999) ("A breach of express warranty claim . . . cannot be premised on an omission.").

***Magnuson-Moss Warranty Act.*** As a threshold matter, the MMWA claim fails because there are fewer than 100 named plaintiffs. *See* 15 U.S.C. § 2310(d)(3)(C); *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 732 (7th Cir. 2021); *accord Chen v. Dunkin' Brands, Inc.*, No. 17-3808, 2018 WL 9346682, at *6 n.6 (E.D.N.Y. Sept. 17, 2018), *aff'd*, 954 F.3d 492 (2d Cir. 2020). Additionally, "[b]ecause Plaintiff has not pled a [plausible] state law claim of express or implied warranty, his MMWA claim fails." *Bynum*, 592 F. Supp. 3d at 315; *Schiesser v. Ford Motor Co.*, No. 16-730, 2016 WL 6395457, at *4 (N.D. Ill. Oct. 28, 2016) (same). As discussed above, Plaintiff fails to state a breach of express warranty claim. And any breach of implied warranty claim fails because Plaintiff alleges that she purchased the product from "various retail stores including Stop & Shop," and therefore lacks privity with Kraft Heinz. AC ¶ 127.[11]

***Fraud/Constructive Fraud.*** Consistent with footnote 6, *supra*, Plaintiff's fraud and constructive fraud claims should be dismissed because Plaintiff fails to plausibly allege a material misrepresentation or omission. *See Bynum*, 592 F. Supp. 3d at 316 (fraud claim requires allegation of "a material misrepresentation or omission of fact"); *accord Wienhoff v. Conagra Brands, Inc.*, No. 21-501, --- F. Supp. 3d ----, 2022 WL 4103974, at *8 (S.D. Ill. Sept. 8, 2022) (same).

---

[11] *See Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016) (privity required for implied warranty claim under New York law); *Manley*, 417 F. Supp. 3d at 1121 (same under Illinois law).

Plaintiff's fraud claim also fails because Plaintiff does not plausibly allege knowledge (*supra*, at pp. 19–21) or intent to defraud.  *See, e.g.*, AC ¶ 140; *Bynum*, 592 F. Supp. 3d at 316 (dismissing fraud claim where plaintiff alleged only that "Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label, when it knew its statements were not true nor accurate"); *accord Wienhoff*, 2022 WL 4103974, at *8 (dismissing fraud claim relying on similarly conclusory intent allegations).

Plaintiff's constructive fraud claim also fails because Plaintiff does not allege that she has a fiduciary or confidential relationship with Kraft Heinz.  *See* AC ¶ 251 (alleging an unspecified "relationship"); *Apace Commc'ns, Ltd. v. Burke*, 522 F. Supp. 2d 509, 520 (W.D.N.Y. 2007) (dismissing constructive fraud claim based on failure to plead fiduciary or confidential relationship where the parties "appear[ed] to be nothing more than parties to a commercial transaction"); *Tome Engenharia E. Transporrtes, Ltd. v. Malki*, No. 94-7427, 1996 WL 172286, at *7 (N.D. Ill. Apr. 11, 1996) (dismissing constructive fraud claim absent alleged fiduciary relationship).

***Unjust Enrichment.***  Plaintiff's unjust enrichment claim should be dismissed because it simply duplicates Plaintiff's other deficient claims.  *See* AC ¶ 262 (unjust enrichment claim citing alleged misrepresentations); *Bynum*, 592 F. Supp. 3d at 316 (dismissing unjust enrichment claim premised on same allegations as other claims because "[i]f the unjust enrichment claim is duplicative, and if plaintiff['s] other claims are defective, an unjust enrichment claim cannot remedy the defects") (citation and internal quotation marks omitted); *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (where unjust enrichment claim "rests on the same improper conduct alleged in another claim," unjust enrichment claim "will stand or fall" with that claim).

## CONCLUSION

For the foregoing reasons, Kraft Heinz respectfully requests that the Court grant its motion and dismiss Plaintiff's claims with prejudice and without leave to amend.

Dated:  April 21, 2023

Respectfully submitted,

By: /s/ Dean N. Panos
       Dean N. Panos (ARDC No. 6203600)
       JENNER & BLOCK LLP
       353 North Clark Street
       Chicago, IL 60654
       Telephone:  (312) 222-9350
       Facsimile:   (312) 527-0484
       DPanos@jenner.com

       Attorneys for Defendant
       The Kraft Heinz Company

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a copy of the foregoing document was filed on April 21, 2023 with the Clerk of the Court by using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

Dated:  April 21, 2023                                   By: _____ /s/ Dean N. Panos_____
                                                                              Dean N. Panos