# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

ALEXANDRA TORIBIO, individually and on behalf of all others similarly situated,

         Plaintiff,

v.

THE KRAFT HEINZ COMPANY,

         Defendant.

**CASE NO: 1:22-CV-06639**

## PLAINTIFF'S MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Dated: May 19, 2023

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**

Nick Suciu III
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
nsuciu@milberg.com

Gary Klinger
221 West Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
gklinger@milberg.com

Erin Ruben
900 W. Morgan Street
Raleigh, NC 27603
T: 919-600-5000
eruben@milberg.com

J. Hunter Bryson*
405 E 50th Street
New York, NY 10022
Tel: (630) 796-0903
hbryson@milberg.com

**THE SULTZER LAW GROUP P.C.**

Jason P. Sultzer, Esq.*
Daniel Markowitz, Esq.*
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

* *Pro Hac Vice* application forthcoming

*Attorneys for Plaintiff and the Proposed
Class*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ..................................................................................................2

LEGAL STANDARD ..............................................................................................................5

ARGUMENT ...........................................................................................................................5

    I.      PLAINTIFF HAS SUFFICIENTLY ALLEGED THE PRODUCT CONTAINS PFAS ..............................................................................................................................5

    II.     PLAINTIFF HAS ARTICLE III STANDING FOR HER CLAIMS ......................8

          A.     Plaintiff Has Standing to Seek Damages ....................................................8

               1.     Plaintiff Has Alleged Injury-In-Fact ................................................8

               2.     Plaintiff is Not Required to Allege an Imminent Risk of Harm to Have Standing for Economic Injury .................................................10

          B.     Plaintiff Has Standing for Injunctive Relief ..............................................12

    III.    PLAINTIFF'S ICFA CLAIMS ..............................................................................13

    IV.   PLAINTIFF HAS STATED VALID CONSUMER PROTECTION CLAIMS....13

          A.     A Reasonable Consumer Analysis Should Not be Performed at This Stage ..................................................................................................................13

          B.     Plaintiff Has Identified Several Affirmative Misrepresentations in the Product's Marketing ..............................................................................14

          C.     Plaintiff Has Stated a Viable Omissions Claim .........................................17

          D.     Plaintiff Has Adequately Pled the Materiality of Defendant's Omissions 18

          E.     Plaintiff Has Plausibly Alleged the Product is Adulterated ......................19

    V.     PLAINTIFF'S FAILURE-TO-DISCLOSE CLAIMS ARE NOT PREEMPTED 21

    VI.   PLAINTIFFS OTHER CAUSES OF ACTION ARE VIABLE...........................23

CONCLUSION.......................................................................................................................25

i

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Access Living of Metro. Chicago v. James C. Cheng Living Tr.*,
No. 15 C 2091, 2015 WL 4978691, (N.D. Ill. Aug. 20, 2015) .................................................. 5

*Aqua Dots Prods. Liability Litig.*,
654 F.3d 748 (7th Cir. 2011) .......................................................................................... 11, 12

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ......................................................................................................... 5

*Axon v. Citrus World, Inc.*,
354 F. Supp. 3d 170 (E.D.N.Y. Dec. 10, 2018) ................................................................. 15, 16

*Barclay v. ICON Health & Fitness, Inc.*,
2020 U.S. Dist. LEXIS 191215, 2020 WL 6083704 (D. Minn. Oct. 15, 2020) ...................... 24

*Barnes v. Unilever U.S. Inc.*,
2022 WL 2915629 (N.D. Ill. Jul. 24, 2022) ........................................................................ 8, 12

*Barnes v. Unilever United States Inc.*,
No. 21 C 6191, 2023 WL 2456385 (N.D. Ill. Mar. 11, 2023) ................................................ 20

*Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795 (S.D.N.Y. 2021) ...................................... 20

*Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litigation*,
No. 08-1967, 2009 WL 3762965 (W.D. Mo. Nov. 9, 2009), ................................................... 22

*Block v. Lifeway Foods, Inc.*,
No. 17 C 1717, 2017 WL 3895565 (N.D. Ill. Sept. 6, 2017) ................................................. 13

*Broder v. Cablevision Systems Corp.*,
418 F.3d 187 (2d Cir. 2005) ................................................................................................. 20

*Brown v. Coty, Inc.*,
No. 22 CIV. 2696 (AT), 2023 WL 2691581 (S.D.N.Y. Mar. 29, 2023) ................................... 9

*Brown v. Lockwood*,
76 A.D.2d 721, 432 N.Y.S.2d 186 (2d Dep't 1980) ............................................................... 25

*Buonasera v. Honest Co., Inc.*,
208 F. Supp. 3d 555 (S.D.N.Y. 2016) .................................................................................. 14

*Carrol v. S.C. Johnsons & Son, Inc.*,
No. 17-CV-05828, 2018 WL 1695421 (N.D. Ill. Mar. 29, 2018) ....................................... 7, 13

*Castillo v. Unilever United States, Inc.*,
No. 20 C 6786, 2022 WL 704809 (N.D. Ill. Mar. 9, 2022) .................................................... 11

*Cleary v. Philip Morris Inc.*,
  656 F.3d 511 (7th Cir. 2011) ................................................................. 25

*Clinger v. Edgewell Personal Care Brands, LLC*,
  No. 31-cv-1040 (JAM), 2023 WL 2477499 (D. Conn. Mar. 13, 2023) ............................ 9, 19

*Cornelia Fifth Ave., LLC v. Canizales*,
  No. 1:12-cv-07660, 2016 U.S. Dist. LEXIS 131556 (S.D.N.Y. Sep. 26, 2016) .................... 25

*Cosmetique, Inc. v. ValueClick, Inc.*,
  753 F. Supp. 2d 716 (N.D. Ill. 2010) .......................................................... 5

*Curtis v. 7-Eleven, Inc.*,
  No. 21-CV-6079, 2022 WL 4182384 (N.D. Ill. Sept. 13, 2022) ................................ 11

*Doss v. Gen. Mills, Inc.*,
  No. 18-61924-CIV, 2019 WL 7946028 (S.D. Fla. June 14, 2019), aff'd, 816 F. App'x 312
  (11th Cir. 2020) .......................................................................... 10

*Duran v. Henkel of Am., Inc.*,
  450 F. Supp. 3d 3376 (S.D.N.Y. 2020) ...................................................... 14

*Gaminde v. Lang Pharma Nutrition, Inc.*,
  No. 118CV300GLSDEP, 2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019) ............................ 10

*Gen. Mills Glyphosate Litig.*,
  No. 16-2869 (MJD/BRT), 2017 U.S. Dist. LEXIS 108469 (D. Minn. July 12, 2017)............ 16

*George v. Starbucks Corp.*,
  No. 19-cv-6185 (AJN), 2020 U.S. Dist. LEXIS 217016 (S.D.N.Y. Nov. 19, 2020)............... 15

*Gerber Prod. Co. Heavy Metals Baby Food Litig.*,
  No. 121CV269MSNJFA, 2022 WL 10197651 (E.D. Va. Oct. 17, 2022) ........................... 12

*Grossman v. Simply Nourish Pet Food Co. LLC*,
  516 F. Supp. 3d 261 (E.D.N.Y. 2021) ...................................................... 15

*Gubala v. CVS Pharmacy, Inc.*,
  No. 14 C 9039, 2016 WL 1019794 (N.D. Ill. Mar. 15, 2016) .................................. 6

*Gubala v. HBS Int'l Corp.*,
  No. 14 C 9299, 2016 WL 2344583 (N.D. Ill. May 4, 2016) .................................... 6

*Harris v. Pfizer Inc.*,
  586 F. Supp. 3d 231 (S.D.N.Y. 2022) .................................................... 9, 17

*Henning v. Luxury Brand Partners, LLC*,
  No. 22-cv-07011-TLT (N.D. Cal., May 11, 2023) ............................................ 19

*Holt v. Foodstate, Inc.*,
  No. 15cv78 L (JMA), 2015 U.S. Dist. LEXIS 173403 (S.D. Cal. Dec. 31, 2015).................. 18

*Kanan v. Thinx Inc.*,
  No. CV 20-10341 JVS (JRPx), 2021 WL 4464200 (C.D. Cal. June 23, 2021).................. 7, 11

iii

*Kimca v. Sprout Foods, Inc.*,
  No. 21-12977, 2022 WL 1213488 (D.N.J. Apr. 25, 2022)......................................................... 12

*Krommenhock v. Post Foods, LLC*,
  255 F. Supp. 3d 938 (N.D. Cal. 2017) ...................................................................................... 21

*Lateef v. Pharmavite LLC*,
  No. 12-5611, 2012 WL 5269619 (N.D. Ill. Oct. 24, 2012) ....................................................... 22

*Leiner v. Johnson & Johnson Consumer Companies, Inc.*,
  215 F. Supp. 3d 670 (N.D. Ill. 2016) ........................................................................................ 13

*Mogull v. Pete and Gerry's Organics, LLC*,
  2022 U.S. Dist. LEXIS 35237 (S.D.N.Y. Feb. 28, 2022) ......................................................... 14

*Muir v. NBTY, Inc.*,
  No. 15 C 9835, 2016 WL 5234596 (N.D. Ill. Sept. 22, 2016) .............................................. 7, 13

*Muir v. Playtex Prods., LLC*,
  983 F. Supp. 2d 980 (N.D. Ill. 2013) ........................................................................................ 11

*Myers v. Wakefern Food Corp.*,
  20 Civ. 8470 (NSR), 2022 WL 603000 (S.D.N.Y. Mar. 1, 2022)............................................... 6

*N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*,
  962 F. Supp. 2d 514 (S.D.N.Y. 2013) ....................................................................................... 20

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*,
  875 F.3d 107 (2d Cir. 2017) ...................................................................................................... 20

*O'Boyle v. Real Time Resolutions, Inc.*,
  910 F.3d 338 (7th Cir. 2018) ..................................................................................................... 25

*Onaka v. Shiseido Americas Corp.*,
  No. 21-CV-10665-PAC, 2023 WL 2663877 (S.D.N.Y. Mar. 28, 2023)...................................... 9

*Parks v. Ainsworth Pet Nutrition, LLC*,
  337 F. Supp. 3d 241 (S.D.N.Y. 2019) ....................................................................................... 16

*Pels v. Keurig Dr. Pepper, Inc.*,
  No. 19-CV-3052-SI, 2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) ........................................... 10

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank*,
  N.V., 68 F.3d 1478 (2d Cir. 1995) ............................................................................................. 17

*Ries v. Arizona Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) .............................................................................................. 13

*Santiful v. Wegmans Food Markets, Inc.*,
  No. 20-CV-2933 (NSR), 2022 WL 268955 (S.D.N.Y. Jan. 28, 2022) ........................................ 6

*Schloegel v. Edgewell Personal Care Co.*,
  No. 4:21-CV-0631 DGK, 2022 WL 808694 (W.D. Mo. Mar. 16, 2022)................................... 10

iv

*Sciortino v. Pepsico, Inc.*,
   108 F. Supp. 3d 780 (N.D. Cal. 2015) ................................................................... 22

*Segedie v. Hain Celestial Grp., Inc.*,
   No. 14-cv-5029 (NSR), 2015 U.S. Dist. LEXIS 60739 (S.D.N.Y. May 7, 2015) ............. 14, 15

*Solis v. Coty, Inc.*,
   No. 22-CV-0400-BAS-NLS, 2023 WL 2394640 (S.D. Cal. Mar. 7, 2023) ........................... 10

*Stuve v. Kraft Heinz Co.*,
   No. 21-CV-1845, 2023 U.S. Dist. LEXIS 6184 (N.D. Ill. Jan. 12, 2023) ............. 18, 19, 21, 25

*Turek v. General Mills, Inc.*,
   662 F.3d 423 (7th Cir. 2011) ................................................................................. 22

*Turnipseed v. Simply Orange Juice Co.*,
   No. 20-8677, 2022 WL 657413 (S.D.N.Y. Mar. 4, 2022) ............................................. 6

*Velez v. RM Acquisition, LLC*,
   No. 21-cv-02779, 2023 U.S. Dist. LEXIS 69976 (N.D. Ill. Apr. 21, 2023) ........................... 24

*Wallace v. ConAgra Foods, Inc.*,
   747 F.3d 1025 (8th Cir. 2014) ............................................................................... 10

*Warren v. Whole Foods Mkt. California, Inc.*,
   2022 WL 2644103 (N.D. Cal. July 8, 2022) ................................................................ 7

*Yeldo v. MusclePharm Corp.*,
   290 F. Supp. 3d 702, 714 (E.D. Mich. 2017) ............................................................... 13

**Statues, Rules, and Regulations**

21 C.F.R. § 101.100(a)(3) ............................................................................................ 21

21 C.F.R. § 101.100(a)(3)(iii) ................................................................................. 17, 21

15 U.S.C. §§ 2301 ............................................................................................... 23, 24

21 U.S.C. § 342(a)(1) .............................................................................................. 4, 19

21 U.S.C. § 343(a) ..................................................................................................... 4

21 U.S.C. § 343(i) ................................................................................................. 17, 23

21 U.S.C. §343-1 ..................................................................................................... 21

21 U.S.C. 343(i)(2) ................................................................................................... 21

410 ILCS 620/10(a)(1) ............................................................................................... 19

CAFA, Pub. L. No. 109-2 (2005) .............................................................................. 23, 24

Fed. R. Civ. P. 9(b) ................................................................................................... 8

v

FED. R. CIV. P. 12(b)(6) ............................................................................................. 7

N.Y. AGRIC. & MKTS. § 200 ..................................................................................... 19

NLEA, Pub. L. 101-535, § 6, 104 Stat. 2343 (1990) ............................................ 21, 22

**Other Authorities**

Kristen M. Rappazzo, et al., *Exposure to Perfluorinated Alkyl Substances and Health Outcomes in Children: A Systematic Review of the Epidemiologic Literature,* 14(7) Int'l J. Envtl. Res. Pub Health, 691. (27 Jun. 2017) ......................................................................... 3

Plaintiff Alexandra Toribio respectfully submits this Memorandum of Law in Opposition to Defendant The Kraft Heinz Company's ("Kraft" or "Defendant") Motion to Dismiss (ECF Nos. 34-35) (hereinafter the "Motion" or "MTD").

## INTRODUCTION

This is a simple case. Defendant manufactures and sells Capri Sun® Strawberry Kiwi juice drink ("Capri Sun" or the "Product"), which is marketed primarily as a children's beverage made of "All Natural Ingredients." Amended Class Action Complaint (ECF No. 30) (hereinafter "Compl.") at ¶ 4. In reality, the Product contains concerning levels of Per- and polyfluoralkyl substances (collectively "PFAS"), a category of toxic man-made chemicals which are associated with numerous health concerns including cancer. *Id*. ¶ 8.

Nowhere on the Products' labels is PFAS listed as an ingredient, yet Plaintiff's independent testing, which was conducted according to industry standards, has shown the presence of multiple PFAS substances in the Products, including Perfluorooctanoic acid ("PFOA"), in amounts more than 200 times the Environmental Protection Agency's (EPA) current recommended levels of exposure. *Id*. ¶¶ 63-64, 70, 72. The presence of PFAS in the Product is entirely inconsistent with all of Defendant's marketing claims and renders the Product adulterated, misbranded, and illegal to sell under federal and state law. *Id*. ¶¶ 9-10.

Even the *risk* that a juice beverage that is consumed primarily by children would contain a chemical linked to cancer and other serious health effects would be material to a reasonable consumer. PFAS, including the specific varieties of PFAS found in the Product, are associated with disruption in neurodevelopment, renal disfunction, and diminished antibody vaccination response in children. *Id*. ¶¶ 53-55. The EPA recently confirmed that the levels at which negative

1

health effects could occur are near zero in some cases. *Id*. ¶ 68. Accordingly, the presence of PFAS at *any* level is unacceptable.

Defendant is well-aware that consumers demand—and pay a premium for-- health-conscious beverage options that are free from harmful artificial or synthetic ingredients. *Id*. ¶ 102. Plaintiff and other Class Members were injured as a result of Defendant's unlawful conduct when they bargained for a juice beverage that contained "All Natural Ingredients" and instead received a Product adulterated with toxic PFAS. *Id*. ¶ 128.

For the following reasons, Defendant's Motion should be denied.

## FACTUAL BACKGROUND

Defendant markets and sells the Capri Sun Product, which it touts as the "#1 Kids' Favorite Juice Drink," throughout the United States at mass market retailers, grocery stores, and online. Compl. ¶ 23, 25. On the Product's packaging, Defendant represents to consumers: "We've always been dedicated to making pouches full of goodness but now we've leveled up. Each pouch is full of ALL NATURAL INGREDIENTS." *Id*. ¶ 31 (emphasis original). Indeed, Defendant repeats these all-natural claims across the Product's packaging, including the front label, and displays them prominently on its website. *Id*. ¶¶ 27–34. If there were any ambiguity in the all-natural claims, Defendant spells out unequivocally that "[e]very ingredient in Capri Sun® is All Natural," and "Capri Sun® Kids' Drinks are always made with natural ingredients." *Id*. ¶ 33.

Defendant understands the importance of these claims to consumers. The Kraft Heinz Company is a large, multinational food and beverage conglomerate. To stay competitive in the $1.5 billion market for children's juice boxes in the face of increasingly health-minded consumers, the company needs to convince consumers that the beverages it is marketing to their children are natural, healthy, and safe. *Id*. ¶ 22. Unbeknownst to consumers, however, the Product is

2

adulterated with toxic, persistent, and bioaccumulative "forever chemicals" collectively referred to as PFAS.

Far from "all natural," PFAS are man-made chemicals associated with myriad health issues including (1) reproductive issues, (2) developmental delays, (3) increased risk of cancer, (4) decreased immunity, (5) reduced vaccine response, (6) hormonal imbalance, and (7) obesity and metabolic disorder. *Id.* ¶ 46–47. In fact, the American Environmental Protection Agency and the European Environmental Agency warn that children-- Capri Sun's target demographic-- are among the most at risk of adverse health impacts from PFAS. *Id.* ¶¶ 48, 51.

The harmful health effects of PFAS are well-documented. Early exposure to PFAS has been shown to increase the risk of disease in children, including allergies, infectious disease, and asthma. *Id.* ¶ 53, 55. Exposure to PFAS has also been associated with cognitive delays and behavioral issues in scientific studies. *Id*. ¶ 54. The harmful effects of PFAS are only compounded by the fact that there is no treatment for the toxic bioaccumulative effects of PFAS. *Id.* ¶ 58. PFAS ingested in adulterated products like Defendant's Capri Sun accumulate over time and remain in the body. *Id.*

Defendant characterizes the Plaintiff's claims as alleging "trace levels of PFAS in the Product." MTD at 2. Even if this *were* true, the deleterious health effects of PFAS are implicated in children "even at doses that have little effect in adults."[1] Indeed, the EPA notes that the negative health effects from PFAS begin at much lower levels than previously understood—in some cases at near zero levels. Compl. ¶ 68. Far from "near zero" or "trace levels," however, Plaintiff's

---

[1] Compl. ¶ 56 (citing Rappazzo, Kristen M et al. "Exposure to Perfluorinated Alkyl Substances and Health Outcomes in Children: A Systematic Review of the Epidemiologic Literature." *International journal of environmental research and public health* vol. 14,7 691. 27 Jun. 2017, doi:10.3390/ijerph14070691).

independent testing of the Capri Sun products found PFAS at more than **200 times** the EPA's current recommended levels of exposure in this purportedly "all natural" Product heavily marketed to children. *Id.* ¶ 72.

In addition to Defendant's affirmative misrepresentations related to the Product, the presence of PFAS also renders it misbranded and adulterated under state and federal law, and therefore illegal to sell. *Id*. ¶¶ 108-109, 113, 117-119. As a beverage, the Product is subject to the Federal Food, Drug & Cosmetic Act ("FDCA"), which prohibits the sale of food that is adulterated by containing a poisonous or deleterious substance that may render it injurious to health. *See* 21 U.S.C. § 342(a)(1). Likewise, the FDCA prohibits the sale of food that is "misbranded" when "its labeling is false or misleading in any particular." *See* 21 U.S.C. § 343(a). New York has adopted the FDCA's labeling requirements as their own; accordingly, the sale of the misbranded and adulterated Products is fraudulent, unfair, deceptive, and unlawful under the New York General Business Law.

Plaintiff and consumers unwittingly purchased the misbranded and adulterated Product, induced by Defendant's purposeful advertisement that the Capri Sun Product was "all natural" and "full of goodness." Plaintiff and consumers at-large have been purchasing and consuming the Product for years, continually accumulating the PFAS "forever chemicals" in their bodies all the while. Throughout this time, Defendant enjoyed a price premium for the adulterated and misbranded Product. If the company had been truthful about the presence of PFAS in the Product, which renders it far from "all natural," it could not have charged as much for the Product. Plaintiff brought suit to hold Defendant accountable for this longstanding and ongoing harm to consumers, alleging violations of New York consumer protection statutes as well as common law claims. *Id*. ¶ 165–263.

**LEGAL STANDARD**

When considering a motion to dismiss, a court must "construe [the complaint] in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in her favor." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). As such, the Court should only dismiss a complaint if the claims are purely speculative and unsupported by the alleged facts and circumstantial evidence. *Id.*

**ARGUMENT**

I. **PLAINTIFF HAS SUFFICIENTLY ALLEGED THE PRODUCT CONTAINS PFAS**

Lacking legal grounds to dismiss Plaintiff's claims, Defendant resorts to misconstruing and attacking the sufficiency of Plaintiff's factual allegations, specifically accusing Plaintiff of failing to provide adequate detail regarding testing methods and specific findings. MTD at 7. Information regarding Plaintiff's testing methodologies and analytical findings may be proper subjects for discovery, but these details ultimately have no bearing on the Motion. At the pleadings stage, a plaintiff does not have to point to evidence or meet an evidentiary burden. *Access Living of Metro. Chicago v. James C. Cheng Living Tr.*, No. 15 C 2091, 2015 WL 4978691, at *2 (N.D. Ill. Aug. 20, 2015). Defendant's contrary arguments are "seeking to overstep the appropriate inquiry at the pleadings stage and to delve into the merits of this action." *Cosmetique, Inc. v. ValueClick, Inc.*, 753 F. Supp. 2d 716, 722 (N.D. Ill. 2010).

5

Plaintiff has alleged that independent third-party testing detected material levels of synthetic PFAS chemicals, including Perfluorooctanoic acid ("PFOA") at levels more than 200 times the current EPA recommended level of 0.004 parts per trillion, in a Product labeled "All Natural." Compl. ¶¶ 26, 63-64, 70, 72. These allegations are sufficient to draw the reasonable inference that Defendant has engaged in deceptive or misleading advertising practices by claiming and representing the Product contains "all natural ingredients." Courts in the Seventh Circuit, including in this district, have found similar allegations sufficient at the motion to dismiss stage.[2] *See Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2016 WL 1019794, at *8 (N.D. Ill. Mar. 15, 2016) (w]hether independent testing. . . confirms Plaintiff's claim of overstated protein content is an issue of proof, and Plaintiff does not need to prove his case at the pleading stage of the case."); *Gubala v. HBS Int'l Corp.*, No. 14 C 9299, 2016 WL 2344583 (N.D. Ill. May 4, 2016) (same); *In re Herbal Supplements Mktg. & Sales Practices Litig.,* No. 15-CV-5070, 2017 WL 2215025, at *12 (N.D. Ill. May 19, 2017) ("Courts have permitted consumer claims in nationwide class actions regarding product mislabeling to move forward based on limited testing, including a single test on a single sample of the product at issue...").

---

[2] In support of its argument regarding the pleading testing methodologies, Defendant cites to a trio of cases where plaintiffs alleged that products were falsely labeled as containing "no artificial flavors." MTD at 8. In all three cases, the ingredients at issue could be either naturally *or* artificially derived. The courts found that because the plaintiffs failed to offer *any* details about what their testing showed, they could not draw a reasonable inference that the testing demonstrated the products' flavoring derived from artificial rather than natural sources. *See Santiful v. Wegmans Food Markets, Inc.*, No. 20-CV-2933 (NSR), 2022 WL 268955, at *4 (S.D.N.Y. Jan. 28, 2022); *Myers v. Wakefern Food Corp.*, 20 Civ. 8470 (NSR), 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022); *Turnipseed v. Simply Orange Juice Co*., No. 20-8677, 2022 WL 657413, at *4 (S.D.N.Y. Mar. 4, 2022). These cases stand in stark contrast to Plaintiff's testing, which indicates the presence of man-made PFAS chemicals and therefore allows the Court to reasonably infer that the Product contains an artificial ingredient.

Defendant's argument was expressly rejected in *Carrol v. S.C. Johnsons & Son, Inc.*, No. 17-CV-05828, 2018 WL 1695421, at *1 (N.D. Ill. Mar. 29, 2018). There, defendant argued that plaintiffs "failed to sufficiently alleged [sic] the details of their independent testing and that they are required to attach those results to the Complaint." *Id.* at *3. The court held that plaintiffs alleged sufficient details regarding their testing to overcome a motion to dismiss, as the allegations were sufficient to put defendant on notice as to the specific products at issue, the alleged fault of the products, and defendant's alleged wrongful conduct. *Id*. Plaintiff has done the same here. *See, e.g.,* Compl. ¶¶ 1, 63-65, 70, 72, 89-90, 113, 118. Nothing more is required.

Even if there were any alleged inadequacies in methodology or interpretation of scientific testing (which there are not), this would still not warrant dismissal under Rule 12(b)(6) so long as the court can still reasonably infer from the testing results and other alleged facts, taken as true, that the defendant is liable for the misconduct alleged. *Warren v. Whole Foods Mkt. California, Inc.*, 2022 WL 2644103, at *6 (N.D. Cal. July 8, 2022) (rejecting defendant's arguments that pleading failed to disclose all of the details regarding plaintiffs' independent testing and finding factual allegations that product contained artificial vanilla based on the independent testing "plausible"). *See also Muir v. NBTY, Inc.*, No. 15 C 9835, 2016 WL 5234596, at *6 (N.D. Ill. Sept. 22, 2016) (holding that compliance with a particular testing protocol is not a requirement at the pleading stage and "declin[ing] to decide what Plaintiff will need to prove in order to establish its claims.").

Plaintiff's allegations regarding the presence of PFAS in the Product are sufficient even under a heightened pleading standard. In *Kanan v. Thinx Inc.*, No. CV 20-10341 JVS (JRPx), 2021 WL 4464200, at *1 (C.D. Cal. June 23, 2021), plaintiffs alleged that menstrual underwear contained PFAS chemicals that contradicted its marketing that the product was free of harmful

chemicals. Defendant argued that plaintiffs' allegations were insufficient under Rule 9(b) because they failed to provide any information on the testing that allegedly showed PFAS in the products, including when the testing was conducted, the standards used, or its methodology. *Id.* at *5. The court found that these arguments were factual disputes related to the credibility of plaintiffs' allegations, rather than sufficiency arguments regarding the plausibility of the allegations themselves under Rule 9(b). *Id.* ("[Defendant] seems to be arguing predominantly about the merits of Plaintiffs' claims, which is inappropriate at the motion to dismiss stage.").

## II.     PLAINTIFF HAS ARTICLE III STANDING FOR HER CLAIMS

### A.  Plaintiff Has Standing to Seek Damages

#### 1.  Plaintiff Has Alleged Injury-In-Fact

Defendant contends Plaintiff lacks standing because she fails to allege that the specific Product that *she* purchased contained PFAS. MTD at 9. This argument is contrary to Seventh Circuit law.

Plaintiff alleges that had Defendant disclosed that she risked exposure to PFAS because the Product contained or risked containing PFAS, she would not have purchased the Product or would have paid less for it. Compl. ¶ 124. This is a sufficient allegation of an injury in fact. *Barnes v. Unilever U.S. Inc.*, 2022 WL 2915629, at *1 (N.D. Ill. Jul. 24, 2022) (finding plaintiff alleged injury in fact by alleging that she would not have purchased a product, or would not have purchased it for the listed price, had she known it risked containing a human carcinogen). Because Plaintiff alleges that she would not have purchased the Product had she known of the *risk* it contained PFAS, whether the particular unit of the Product Plaintiff purchased contains PFAS has no bearing on the Court's standing analysis. *Id.* at *1, n. 1. ("This is so even if, as Unilever contends, benzene contamination applied only to some limited lots of its product. Barnes's theory of injury holds

water even if based on the proposition that she would not have purchased the product had she known of the risk it contained benzene."); *Clinger v. Edgewell Personal Care Brands, LLC*, No. 31-cv-1040 (JAM), 2023 WL 2477499, at *6 (D. Conn. Mar. 13, 2023) ("These four plaintiffs properly claim that they would not have paid as much or anything for their sunscreen had the label warned of the *risk* of benzene contamination—a risk that is plausibly alleged to have existed in the first place in light of the independent testing results for specific product lines that these four plaintiffs purchased.")

Finding no support in the Seventh Circuit, Defendant relies on out-of-circuit authority that is both factually and legally inapposite. *Onaka v. Shiseido Americas Corp.*, No. 21-CV-10665-PAC, 2023 WL 2663877, at *1 (S.D.N.Y. Mar. 28, 2023) *Brown v. Coty, Inc.*, No. 22 CIV. 2696 (AT), 2023 WL 2691581, at *1 (S.D.N.Y. Mar. 29, 2023) are both false advertising cases related to the presence of PFAS in cosmetics. Neither case creates any legal requirement for plaintiffs to test their personal products for PFAS contamination in order to establish injury in fact as Defendant suggests. MTD at 10. Rather, these cases recognize that there are a variety of ways to that a plaintiff may allege economic injury in cases such as this one, including by alleging the purchase of a product that is misbranded under the FDCA as Plaintiff has done here. Compl. ¶¶ 113, 117-118, 122, 124; *Onaka* at *4 (citing *Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 239 (S.D.N.Y. 2022) (finding economic injury sufficient to confer standing where plaintiffs alleged they paid more for a medication that was misbranded under the FDCA than they would have had they been aware the medication had an undisclosed defect)); *Brown* at *5. Crucially, unlike the present action, neither the *Onaka* plaintiffs nor the *Brown* plaintiffs alleged that PFAS rendered their products adulterated or misbranded under the FDCA and parallel state statutes.

Defendant relies on three additional cases for the legal premise that a plaintiff must

expressly allege that the specific item they purchased is adulterated. MTD at 10, n. 1. *See Schloegel v. Edgewell Personal Care Co.*, No. 4:21-CV-0631 DGK, 2022 WL 808694, at *1 (W.D. Mo. Mar. 16, 2022); *Doss v. Gen. Mills, Inc.*, No. 18-61924-CIV, 2019 WL 7946028, at *2–3 (S.D. Fla. June 14, 2019), aff'd, 816 F. App'x 312 (11th Cir. 2020); and *Pels v. Keurig Dr. Pepper, Inc.*, No. 19-CV-3052-SI, 2019 WL 5813422, at *1 (N.D. Cal. Nov. 7, 2019)). Defendant fails to cite any Seventh Circuit decision that would support this proposition, and other courts have declined to extend the holdings of *Schloegel*, *Doss*, and *Pels* to create any such requirement. *See Solis v. Coty, Inc.*, No. 22-CV-0400-BAS-NLS, 2023 WL 2394640, at *11 (S.D. Cal. Mar. 7, 2023) ("Solis need not explicitly allege the unit of Product she purchased actually contained PFAS or that all units of the Product contain PFAS but may simply aver facts from which this Court can make such reasonable inferences.") Defendant's remaining authority involves cases which were dismissed due to plaintiffs' failure to obtain *any* independent testing, and are therefore inapplicable here. *See, e.g., Gaminde v. Lang Pharma Nutrition, Inc.*, No. 118CV300GLSDEP, 2019 WL 1338724, at *3 (N.D.N.Y. Mar. 25, 2019) (plaintiff failed to conduct any independent testing, relying solely on an article in USDA journal to support allegations that supplement did not contain full amount of Omega-3 Krill Oil represented on label); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) (plaintiff alleged that some hot dogs were not kosher based on production inefficiencies, but could not demonstrate which products did not meet the kosher representations as it was impossible to detect whether meet was non-kosher).

### 2. Plaintiff is Not Required to Allege an Imminent Risk of Harm to Have Standing for Economic Injury

Plaintiff has unequivocally alleged that she incurred actual economic harm at the point of sale when she purchased (or paid more for) Products that were adulterated, misbranded, and mislabeled by Defendant. Compl. ¶ 128. This is sufficient to establish standing at the pleading

stage. *See Aqua Dots Prods. Liability Litig.,* 654 F.3d 748 (7th Cir. 2011) (plaintiffs alleged that a children's toy consisted of beads that resembled candy but were harmful if swallowed… [t]he Seventh Circuit concluded that parents of children who had not been physically injured nevertheless had standing because, having paid more for the toys than they would have, had they known of the hazard, the parents had suffered financial injury.); *Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 986 (N.D. Ill. 2013) (holding that a claim that consumer would not have purchased product or not have paid a premium price for the product is sufficient injury to establish standing); *Castillo v. Unilever United States, Inc.*, No. 20 C 6786, 2022 WL 704809, at *3 (N.D. Ill. Mar. 9, 2022) (finding standing where plaintiffs alleged they suffered financial loss by purchasing and/or paying a premium price for products containing allegedly harmful chemicals); *Curtis v. 7-Eleven, Inc.*, No. 21-CV-6079, 2022 WL 4182384, at *6 (N.D. Ill. Sept. 13, 2022) (finding standing where plaintiff alleged she would not have purchased paper products represented as "recyclable," or would have at least paid less for them, had she known they could not be recycled); *See also Kanan v. Thinx Inc.*, No. CV 20-10341 JVS (JRPx), 2021 WL 4464200, at *5-6 (C.D. Cal. June 23, 2021) (finding standing where plaintiffs alleged that material misstatements regarding the presence of PFAS in menstrual underwear led them to purchase or pay more for products that they would not have otherwise purchased).

Defendant relies on two recent out-of-circuit opinions regarding the presence of heavy metals in baby food in support of its argument that Plaintiff must "allege that she faces an imminent risk of harm from the levels of PFAS allegedly found in the Product." MTD at 12. These cases are at odds with Seventh Circuit precedent, which has unequivocally held that allegations that a plaintiff would not have bought a dangerous or defective product had they known of the defect— even if the product was only at *risk* of being dangerous—are sufficient to establish economic

11

injury. *In re Aqua Dots Products Liability Litigation*, 654 F.3d 748, 751 (7th Cir. 2011); *Barnes v. Unilever United States Inc.*, No. 21 C 6191, 2022 WL 2915629, at *1 (N.D. Ill. July 24, 2022) (finding "[plaintiff's] theory of injury holds water even if based on the proposition that she would not have purchased the product had she known of the risk it contained benzene."). Plaintiff is not required to allege an imminent risk of harm.

Nonetheless, both *In re Gerber Prod. Co. Heavy Metals Baby Food Litig.*, No. 121CV269MSNJFA, 2022 WL 10197651, at *5 (E.D. Va. Oct. 17, 2022) and *Kimca v. Sprout Foods, Inc.*, No. 21-12977, 2022 WL 1213488, at *5 (D.N.J. Apr. 25, 2022) raised solely omissions claims based on defendant's failure to disclose chemicals in baby food, and are therefore easily distinguishable on the facts alone.[3] Plaintiff has alleged both omissions and affirmative misrepresentations, including those which appear on the Product's label, which are directly contradicted by the presence of PFAS. Compl. ¶¶ 128, 154. Both *Gerber* and *Kimca* recognized these misrepresentations would provide an avenue for pleading economic injury. *Gerber* at *8 (finding that in order to support benefit of the bargain theory, plaintiff must allege the product failed to perform as advertised); *Kimca* at *8 (recognizing false advertising as a basis for price premium theory).

### B. Plaintiff Has Standing for Injunctive Relief

Defendant is incorrect that Plaintiff cannot be harmed in the future now that she is aware of the presence of PFAS in the Product. MTD at 14. As the Northern District of Illinois has

---

[3] Defendant cites numerous other cases where plaintiffs alleged an increased risk-of-injury resulting from allegedly unsafe products. These cases are easily distinguishable, as none of the plaintiffs alleged they were persuaded to buy the accused product based on an <u>affirmative representation</u>. *See Herrington v. Johnson & Johnson Consumer Cos., Inc.,* C 09–1597 CW, 2010 WL 3448531, at *4 (N.D. Cal. Sept. 1, 2010) (no standing where plaintiffs purchased products later found to contain potentially harmful chemicals); *In re Fruit Juice Prods. Mktg. & Sales Practices Litig.,* 831 F. Supp. 2d 507, 510 (D. Mass. 2011) (same); *Koronthaly v. L'Oreal USA, Inc.,* 374 Fed.Appx. 257, 258 (3d Cir. 2010) (same).

explained, if "the complaining consumer's standing dissipated the moment she discovered the alleged deception and could no longer be fooled," then "the injunctive provisions of consumer protection statutes [] could never be invoked to enjoin deceptive practices." *Leiner v. Johnson & Johnson Consumer Companies, Inc.,* 215 F. Supp. 3d 670, 673 (N.D. Ill. 2016). *See also Carrol v. S.C. Johnsons & Son, Inc.*, No. 17-CV-05828, 2018 WL 1695421, at *3 (N.D. Ill. Mar. 29, 2018) ("To accept the defendant's interpretation . . . would preclude standing for injunctive relief in practically all false advertising cases."); *Muir v. NBTY, Inc.*, 2016 WL 5234596, at *10 (N.D. Ill. Sept. 22, 2016); *Yeldo v. MusclePharm Corp.*, 290 F. Supp. 3d 702, 714 (E.D. Mich. 2017). To hold otherwise would require that "plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, [and] then injunctive relief would never be available in false advertising cases, a wholly unrealistic result" for the very harm which consumer protection statutes are designed to redress. *Ries v. Arizona Beverages USA LLC,* 287 F.R.D. 523, 533 (N.D. Cal. 2012); *see also Block v. Lifeway Foods, Inc.,* No. 17 C 1717, 2017 WL 3895565, at *7 (N.D. Ill. Sept. 6, 2017). Accordingly, Plaintiff in this case maintains standing to seek injunctive relief regardless of whether they intend to purchase another Product (or other Product manufactured by Defendant) again in the future.

### III.    PLAINTIFF'S ICFA CLAIMS

Plaintiff voluntarily dismisses her claims under the Illinois Consumer Fraud Act without prejudice.

### IV.    PLAINTIFF HAS STATED VALID CONSUMER PROTECTION CLAIMS

#### A.  A Reasonable Consumer Analysis Should Not be Performed at This Stage

Defendant seeks dismissal of Plaintiff's GBL claims on the basis that Plaintiff cannot meet the "reasonable consumer" standard.  MTD at pg. 16.  "While it is possible for a court to decide

13

this question as a matter of law, this inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (citation omitted). Indeed, the vast majority of courts to have considered this issue have agreed to defer resolution of this question beyond the pleading stage. *See Buonasera v. Honest Co., Inc*., 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016) ("Courts have generally held that since this second factor requires a reasonableness analysis, it cannot be resolved on a motion to dismiss."); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029 (NSR), 2015 U.S. Dist. LEXIS 60739, at *12 (S.D.N.Y. May 7, 2015) ("Whether the labels would mislead a reasonable consumer is a question of fact for the jury."); *Hidalgo v. Johnson & Johnson Consumer Companies, Inc*., 148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015) ("A court may make [the reasonable consumer determination] as a matter of law, although usually such a determination is a question of fact.").

"Consequently, '[d]ismissal [at the motion to dismiss stage] is warranted only in a rare situation where it is impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived.'" *Mogull v. Pete and Gerry's Organics, LLC*, 2022 U.S. Dist. LEXIS 35237 at *3 (S.D.N.Y. Feb. 28, 2022). As detailed below this is plainly not an instance where it will be "impossible" for Plaintiff to prove that a reasonable consumer was likely to be deceived by Defendant's conduct.

### B. Plaintiff Has Identified Several Affirmative Misrepresentations in the Product's Marketing

Defendant asserts that Plaintiff cannot meet the reasonable consumer standard because "nothing about the challenged representations promises the absence of PFAS." MTD at 17. This is demonstrably false. The Product is advertised as containing "all natural ingredients." Since PFAS are not naturally occurring, reasonable consumers would conclude that a product containing "all natural ingredients" would not contain PFAS. Courts have consistently determined that "[i]t

is not unreasonable as a matter of law for a consumer to expect that a product labeled 'natural' to contain **only natural**, and not synthetic ingredients." *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 279-80 (E.D.N.Y. 2021) (emphasis added); *see also Petrosino v. Stearn's Prod., Inc.*, No. 16-cv-7735 (NSR), 2018 U.S. Dist. LEXIS 55818 at *7 (S.D.N.Y. Mar. 30, 2018) ("[A] reasonable consumer acting reasonably very well could be misled because they could conclude that the 'natural' label on the cosmetics means that they are made with all natural products"); *Segedie v. Hain Celestial Grp., Inc.,* No. 14-cv-5029 (NSR),2015 U.S. Dist. LEXIS 60739, at *29 (S.D.N.Y. May 7, 2015) ("It is not unreasonable as a matter of law to expect that a product labeled 'natural' or 'all natural' contains only natural ingredients.).

To obfuscate this straightforward conclusion, Defendant cites to the inapposite decision in *George v. Starbucks Corp.*, No. 19-cv-6185 (AJN), 2020 U.S. Dist. LEXIS 217016, at *6 (S.D.N.Y. Nov. 19, 2020), where a court found that the phrase "no artificial dyes or flavors" was not misleading where the product in question contained the pesticide 2,2-dichlorovinyl dimethyl phosphate ("DDVP"). In that case, the court ruled that "DDVP is not an artificial dye or flavor" and thus, "[n]o reasonable consumer would understand that statement to convey any information about the company's use or non-use of pesticides in its stores." *Id*. The facts in *George* are easily distinguishable from those in the instant case because here, the Product claims to be "natural" when it contains ingredients that are unnatural. Accordingly, Plaintiff has plausibly alleged that Defendant's marketing statement is untrue and reasonable consumers would be misled by this deception.

Defendant's citations to matters concerning glyphosate contamination are also inapplicable. Defendant cites to *Axon v. Citrus World, Inc*., 354 F. Supp. 3d 170, 173 (E.D.N.Y. Dec. 10, 2018) where it was alleged that the term "natural" on Florida's Natural orange juice was

misleading because the juice contained "trace amounts of glyphosate, an herbicide used to kill weeds." In dismissing that case, the trial court found that herbicide use is "widespread" and, as such, it is "implausible that a reasonable consumer would believe that a product labeled ['Florida's Natural'] could not contain a trace amount of glyphosate that is far below the amount' deemed tolerable by the FDA." *Id*. at 183. However, the court noted that it would be "*far more misleading* to call a product 'natural' when the defendant has introduced unnatural ingredients than it is to call a product 'natural' when it contains trace amounts of a commonly used pesticide introduced early in the production process." *Id*. (emphasis added). Thus, the *Axon* decision is of no help to Defendant. In *Parks v. Ainsworth Pet Nutrition, LLC,* 337 F. Supp. 3d 241, 248 (S.D.N.Y. 2019), the court determined that the presence of trace amounts of the pesticide glyphosate in dog food would not be material information to a reasonable consumer because the plaintiff failed to provide any information to show that glyphosate is "toxic" or "carcinogenic." The facts here are different as Plaintiff has provided ample support for the contention that PFAS are toxic. *See* Compl. ¶¶ 39-59. In the matter *In re Gen. Mills Glyphosate Litig*., No. 16-2869 (MJD/BRT), 2017 U.S. Dist. LEXIS 108469, at *18 (D. Minn. July 12, 2017), the court found that the product in question contained such a small quantity of glyphosate that "the Products satisfy the federal standard for organic labelling." The case was dismissed because the court concluded that the representation "Made with 100% Natural Whole Grain Oats" "cannot plausibly be interpreted to be more restrictive with regard to synthetic residue than the standard for labelling a product as 'organic' under federal law. *Id.* The facts in the instant matter are simply not analogous as there is no corollary level of PFAS permitted to be contained in Defendant's Product.

In sum, case law dictates that Plaintiff and reasonable consumers would rely upon Defendant's "natural" marketing to mean that the Product does not contain unnatural ingredients,

including PFAS. As such, should a reasonable consumer analysis be performed, Plaintiff's Complaint meets the applicable standard.

### C. Plaintiff Has Stated a Viable Omissions Claim

"A plaintiff may bring a fraud claim based on an omission rather than an affirmative misrepresentation only 'if the non-disclosing party has a duty to disclose.'" *Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 241 (S.D.N.Y. 2022) (quoting *Remington Rand Corp. v. Amsterdam-Rotterdam Bank*, N.V., 68 F.3d 1478, 1483 (2d Cir. 1995)). A duty to disclose can be demonstrated where "one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Id.* Plaintiff satisfied this standard by showing that Defendant has "a comprehensive food safety and product quality management process across their global supply chain" and by linking to Defendant's website where these processes are detailed. *See* Compl. ¶ 76. In view of the foregoing, Plaintiff contends that "based on its own representations regarding its safety and quality control measures, at all times relevant to this action Defendant knew, or at minimum should have known, that its Product contains PFAS." *Id.* at ¶ 77. This is enough at the pleading stage to demonstrate a duty to disclose.

In addition, depending upon resolution of certain questions of fact in this matter, Defendant may have been required by law to disclose the presence of PFAS in its products. The Food Drug and Cosmetics Act ("FDCA") deems food products to be "misbranded" unless a label bears "the common or usual name of each such ingredient[]." 21 U.S.C. § 343(i). Defendant will undoubtedly argue that PFAS is not an intended ingredient in their Products. However, this does not preclude a finding of liability. Under federal regulations, even "incidental additives" in food must be disclosed on a label unless they are present at "insignificant levels." 21 C.F.R. § 101.100(a)(3)(iii).

Plaintiff contends that the levels of PFAS present in the Products is significant by any

17

reasonable measure. However, at worst, the determination of whether the levels of PFAS in the Products is "significant" is a question of fact which cannot be determined at the pleading stage. *See Stuve v. Kraft Heinz Co.,* No. 21-CV-1845, 2023 U.S. Dist. LEXIS 6184, at *20 (N.D. Ill. Jan. 12, 2023) ("whether phthalates are present only at an "insignificant level" is a question of fact, yet to be resolved."); *Holt v. Foodstate, Inc.,* No. 15cv78 L (JMA), 2015 U.S. Dist. LEXIS 173403, at *11 (S.D. Cal. Dec. 31, 2015) ("whether these additives are present in insignificant levels is a question of fact, not suited for dismissal at a preliminary stage in the proceeding."). Accordingly, Defendant's assertion that it had no obligation to disclose the presence of PFAS cannot justify dismissal of Plaintiff's Complaint at this time.

### D. Plaintiff Has Adequately Pled the Materiality of Defendant's Omissions

Defendant next argues that Plaintiff's omissions claims fail because "she does not plausibly allege that the alleged trace amounts of PFAS found in the Product would be material to reasonable consumers." MTD at 20. This contention is based on the false assertion that the amount of PFAS is a "trace amount." To the contrary, Plaintiff alleges that his testing "has revealed the Product contains PFOA in amounts more than 200 times the EPA's current recommended levels of exposure." Compl. ¶ 72. Plaintiff alleges that "[i]n view of the serious health risks associated with exposure to PFAS and PFOA, particularly in children, the quantity of PFAS in the Product is significant and cannot reasonably be considered de minimis." *Id.* at ¶ 74. Indeed, in the Complaint, Plaintiff explains in detail the dangers of PFAS (*see id.* ¶¶ 39-59). This includes the facts that (a) "exposure to PFAS has been shown to affect growth, learning, and behavior in infants and older children" (*Id.* ¶ 52); (b) "PFAS have also been shown to weaken children's immune systems during a critical period of development" (*Id.* ¶ 53); and (c) that there "is no treatment to remove PFAS from the body" (*Id.* ¶ 58).

18

Taking the allegations contained in the Complaint as true, Defendant cannot plausibly contend that a reasonable consumer would consider the inclusion of PFAS in the Product to be immaterial. *See Stuve v. Kraft Heinz Co.*, 2023 WL 184235, at *9 (N.D. Ill. Jan. 12, 2023) (finding plaintiffs plausibly alleged consumers care about the presence of phthalates in their food, even in small amounts, due to the risks associated with such chemicals).

### E.  Plaintiff Has Plausibly Alleged the Product is Adulterated

Plaintiff has plausibly alleged that the Product was adulterated due to the presence of PFAS. Under the relevant regulations, a food is deemed "adulterated" if it "bears or contains any poisonous or deleterious substance which may render it injurious to health." *See* 21 U.S.C. § 342(a)(1); 410 ILCS 620/10(a)(1); N.Y. Agric. & Mkts. § 200; Compl. ¶¶ 107, 121. Plaintiff alleges that PFAS, and specifically PFOA, found in Defendant's Product, is indisputably linked to negative health consequences and is therefore a "poisonous or deleterious substance." Compl. ¶ 108. Furthermore, PFOA was discovered in Defendant's Product at levels that are more than 200 times the EPA's recommended limit for drinking water. *Id.* ¶ 109. Based on new data from human studies, which demonstrate the danger of extremely low levels of exposure, there is no "safe" level of exposure with regard to these chemicals, with negative health effects occurring at near-zero levels of exposure. *Id.* ¶¶ 68-71. At the pleading stage, the Court must accept these allegations as true. *See Clinger v. Edgewell Pers. Care Brands, LLC*, No. 3:21-CV-1040 (JAM), 2023 WL 2477499, at *5 (D. Conn. Mar. 13, 2023) ("Here, I am obliged to credit plaintiff's well-pleaded allegation that benzene is not safe at any level in sunscreen products."); *see also Henning v. Luxury Brand Partners, LLC*, No. 22-cv-07011-TLT (N.D. Cal., May 11, 2023) (finding a lack of guidance on whether benzene in dry shampoo is sufficient to constitute adulteration under the FDA regulations "does not suggest that a manufacturer is free to introduce a 'poisonous or deleterious substance' that may injure users.")

19

Further, Plaintiff has adequately pled a "free-standing" claim that the adulteration of the Product was deceptive under the GBL. The Second Circuit has held that "a GBL claim is viable where the plaintiff 'make[s] a free-standing claim of deceptiveness... that happens to overlap with a possible claim' under another statute that is not independently actionable ...." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 127 (2d Cir. 2017) (quoting *Broder*, 418 F.3d at 200). Accordingly, to the extent that the conduct ascribed to Defendant is inherently deceptive, it supports a claim under the GBL, irrespective of whether it also may constitute a violation of one or more FDA regulations. *See generally N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 519 (S.D.N.Y. 2013).

Plaintiff alleges that Defendant made affirmative misrepresentations to the public that it maintained comprehensive safety and quality control measures. Compl. ¶¶ 75-76. In addition to promising consumers that it "will not compromise" on food safety and quality, Defendant further represents that its quality control process spans across their global supply chain. *Id*. Had Defendant actually done as it represented, it would have necessarily discovered the presence of PFAS in the Product. *Id*. ¶ 126. The natural inference is that Defendant either misrepresented its product safety measures, or that it deceived Plaintiff and class members by selling a Product it knew was adulterated. Either way, Defendant's conduct was deceptive. Furthermore, courts have found similar allegations deceptive under state consumer protection statutes. *Barnes v. Unilever United States Inc.*, No. 21 C 6191, 2023 WL 2456385, at *4 (N.D. Ill. Mar. 11, 2023) (finding plaintiff sufficiently pled claims for deceptive practices where she alleged affirmative misrepresentations regarding defendant's safety practices and quality assurance obligations). This case is nothing like *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 805 (S.D.N.Y. 2021), where plaintiff alleged a that defendant violated the GBL by failing to include additional disclosures on a product label

regarding its artificial vanilla flavoring. Defendant fails to cite any case where a court found as a matter of law that adulteration was not a deceptive practice under the GBL.

## V.    PLAINTIFF'S FAILURE-TO-DISCLOSE CLAIMS ARE NOT PREEMPTED

Defendant contends that Plaintiff's omissions claims are preempted by the Nutrition Labeling & Education Act ("NLEA"). MTD at 24. This is not so. Under the NLEA, states are not permitted to establish requirements for food labeling that are "not identical" to certain sections of the FDCA, including 21 U.S.C. 343(i)(2). As detailed above, Defendant is required to disclose all ingredients in its Product, and even those ingredients which are added incidentally are only exempt from traditional labeling requirements if they are present "at insignificant levels" and are "used in conformity with regulations. . . ." 21 C.F.R. § 101.100(a)(3) and (a)(3)(iii). Though Defendant contends that Plaintiff "cannot argue that PFAS are found in any more than 'insignificant levels'" (MTD at 25), Defendant already lost this same argument in a matter before Judge Pallmeyer earlier this year. In *Stuve*, which dealt with undisclosed phthalates in Defendant's Kraft Mac & Cheese products, Judge Pallmeyer ruled that whether a contaminant is "present only at an 'insignificant level' is a question of fact, yet to be resolved." *Stuve,* 2023 U.S. Dist. LEXIS 6184, at *20.

Moreover, Defendant ignores the fact that the NLEA expressly exempts safety disclosures from preemption. Section 6(c)(2) of the NLEA, which was not codified, states that section 403A of the FDCA, 21 U.S.C. §343-1, "shall not be construed to apply to any requirement respecting a statement in the labeling of food that provides a warning concerning the safety of the food or component of the food." Pub. L. 101-535, section 6, 104 Stat. 2343 (1990). *See Krommenhock v. Post Foods, LLC,* 255 F. Supp. 3d 938, 955 (N.D. Cal. 2017) (stating that "a 'failure to warn' type of claim suggested by plaintiffs is not expressly preempted, absent evidence that consideration of

21

this type of affirmative warning was the focus of the FDA's rulemaking."); *see also Sciortino v. Pepsico, Inc*., 108 F. Supp. 3d 780, 801 (N.D. Cal. 2015) ("Thus, the NLEA carves out an exemption from its express preemption clause where *warnings* concerning the safety of food or *component* of food are at issue." (emphasis in original)).

The cases Defendant cites to establish preemption by the NLEA are all distinguishable. In *Lateef v. Pharmavite LLC*, No. 12-5611, 2012 WL 5269619, at *3 (N.D. Ill. Oct. 24, 2012) the plaintiff conceded that the asserted claims were preempted. Plaintiff in this matter makes no such concession, particularly since significant questions of fact exist which must be explored during discovery. Defendant also cites to *In re Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litigation*, No. 08-1967, 2009 WL 3762965, at *5 (W.D. Mo. Nov. 9, 2009), where a court determined that plaintiff's assertion that defendants should have disclosed the presence of BPA in their products was preempted by federal regulations which exempt incidental additives from labeling requirements. For reasons unknown, the court in that matter appears to not have been presented with the question of whether BPA existed in an "insignificant amount" or was used in accordance with relevant regulations. Thus, the questions of fact which must be resolved here, and which must be determined in Plaintiff's favor at this phase, were not present in the BPA litigation.

Finally, in *Turek v. General Mills, Inc., 662 F.3d 423* (7th Cir. 2011), plaintiff sought to impose disclosure requirements for defendant's "inulin-containing chewy bars" which went beyond what was required by federal law. The instant matter is distinguishable because, depending on certain questions to be resolved during discovery (namely, the amount of PFAS in Defendant's products), this Court might determine that federal law actually requires Defendant to disclose its inclusion of PFAS in its products. Disclosure is the norm, as the FDCA makes clear that a product

22

is considered "mislabeled" if a product containing two or more ingredients does not disclose "the common or usual name of each such ingredient." 21 U.S.C. § 343(i). Defendant relies upon an exemption to that norm, but it remains to be seen whether that exemption applies.

As such, reviewing the pleadings in the light most favorable to Plaintiff, Defendant has not established that Plaintiff's claims are preempted by the NLEA.

## VI.    PLAINTIFFS OTHER CAUSES OF ACTION ARE VIABLE

Defendant concludes with sparse attacks on Plaintiff's remaining causes of action.  they are all unavailing and each is addressed below.

Defendant contends that Plaintiff's state warranty law claims and claims under the Magnuson-Moss Warranty Act ("MMWA") are subject to dismissal for the same reasons justifying dismissal of Plaintiff's GBL claims.  By the same token, Plaintiff contends that these warranty claims are viable and are supported by the several affirmative statements of fact contained on the Product labels and marketing which are identified in the Complaint.

Defendant also argues that Plaintiff's MMWA claim must be dismissed because there are fewer than 100 named plaintiffs.  The requirement for 100 named plaintiffs is found in 15 USCS § 2310(d)(3)(c), which applies to claims brought "under paragraph (1)(B)."  However, Plaintiff's MMWA claim does not derive from 15 USCS § 2310(d)(1)(B).  Rather, Plaintiff's MMWA claim is brought under 15 USCS § 2310(d)(1)(A) which permits a claim to be filed "in any court of competent jurisdiction in any State or the District of Columbia."  As detailed in the Complaint, "this Court has original jurisdiction over this matter based upon the requirements of CAFA; therefore, the Court has alternate jurisdiction over Plaintiff's Magnuson-Moss claim."  Compl. ¶ 166.  Defendant does not dispute that this Court has jurisdiction under CAFA.  This means that the 100 plaintiff requirement under MMWA is nullified because "once plaintiffs have satisfied CAFA, the MMWA's additional requirements do not apply." *Velez v. RM Acquisition, LLC*, No.

21-cv-02779, 2023 U.S. Dist. LEXIS 69976, at *12 (N.D. Ill. Apr. 21, 2023)[4] (quoting *Barclay v. ICON Health & Fitness, Inc*., 2020 U.S. Dist. LEXIS 191215, 2020 WL 6083704, at *7 (D. Minn. Oct. 15, 2020).

Defendant next asserts that Plaintiff's fraud and constructive fraud claims are defective because Plaintiff failed to plausibly allege a material misrepresentation or omission. Plaintiff disagrees with this conclusion for the reasons detailed above. Defendant also asserts that Plaintiff has not plausibly alleged knowledge or an intent to defraud on the part of Defendant. As detailed above, Plaintiff adequately alleged that Defendant possessed knowledge of the contents of its Product specifically by pointing to Defendant's supposed "comprehensive food safety and product quality management process across their global supply chain" and by linking to Defendant's website where these processes are detailed. *See* Compl. ¶ 76. Moreover, Plaintiff has succinctly alleged that "Defendant's uniform marketing is intentionally designed to drive sales and increase profits by targeting health-conscious consumers—and specifically, conscientious parents and caregivers-- who reasonably believe that the Product is free from ingredients which are artificial or otherwise unnatural." Compl. ¶ 7. At the pleading stage, these allegations suffice.

With regard to Plaintiff's constructive fraud claim, Defendant contends that Plaintiff failed to allege "that she has a fiduciary or confidential relationship with Kraft Heinz." MTD at 28. However, this is not required because "[e]ven in an arms-length business relationship, a plaintiff can establish a claim for constructive fraud where the defendant 'misled the plaintiff by false representations concerning the subject of his superior knowledge or expertise.'" *Cornelia Fifth*

---

[4] The *Velez* court noted that "CAFA was enacted to expand federal jurisdiction over class actions and when Congress enacted CAFA, it did so with the knowledge of the MMWA's jurisdictional requirements." *Velez v. RM Acquisition, LLC*, No. 21-cv-02779, 2023 U.S. Dist. LEXIS 69976, at *11-12 (N.D. Ill. Apr. 21, 2023).

*Ave., LLC v. Canizales*, No. 1:12-cv-07660, 2016 U.S. Dist. LEXIS 131556, at *26 (S.D.N.Y. Sep. 26, 2016) (quoting *Brown v. Lockwood*, 76 A.D.2d 721, 432 N.Y.S.2d 186, 193 (2d Dep't 1980)). Defendant's superior knowledge concerning the Product is again established by pointing to its own words regarding its "comprehensive food safety and product quality management program." Defendant cannot plausibly feign ignorance concerning the contents of its Product now that it is a Defendant in a lawsuit.

Finally, Plaintiff's unjust enrichment claim should not be dismissed at this time because, "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Here, Plaintiff has provided this Court with ample bases to deny Defendant's motion to dismiss the asserted GBL claims. As such, Plaintiff's unjust enrichment claim must be left intact at this time. *See Stuve,* 2023 U.S. Dist. LEXIS 6184, at *36 ("Because the court is not dismissing Plaintiffs' failure-to-disclose claim at this time, it also will not dismiss Plaintiffs' appended unjust enrichment claim.").

## CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the Court deny Defendant's Motion. To the extent the Court determines the pleadings are deficient in any respect, Plaintiff should be granted leave to amend. *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 347 (7th Cir. 2018) ("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss.") (internal quotations omitted).

Dated: May 19, 2023                           Respectfully submitted,


/s/ Nick Suciu III
Nick Suciu III*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
nsuciu@milberg.com

Gary Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
221 West Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
gklinger@milberg.com

Erin Ruben
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
900 W. Morgan Street
Raleigh, NC 27603
T: 919-600-5000
eruben@milberg.com

J. Hunter Bryson*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
405 E 50th Street
New York, NY 10022
Tel: (630) 796-0903
hbryson@milberg.com

Jason P. Sultzer, Esq.*
Daniel Markowitz, Esq.*
**THE SULTZER LAW GROUP P.C.**
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com


* *Pro Hac Vice* application forthcoming

*Attorneys for Plaintiff and the Proposed
Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 19, 2023 the foregoing document was filed via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

*/s/ Nick Suciu III*

Nick Suciu III
